

ORIGINAL

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

FILED

JUN - 1 2004

U.S. COURT OF
FEDERAL CLAIMS

DRC, INC.,                              )
                                        )
        Plaintiff                       )
                                        )     Case No. **04 - 940C**
v.                                      )
                                        )
UNITED STATES,                          )
                                        )
        Defendant.                      )

## COMPLAINT

COMES NOW, Plaintiff, DRC, Inc. ("DRC") and files this Complaint and for its cause of action respectfully shows this Court as follows:

1.

DRC is a corporation organized and existing under the laws of South Carolina with its principal place of business in Mobile, Alabama.  DRC performs construction and disaster recovery work throughout the United States and the world.

2.

The United States Agency for International Development ("USAID") is an independent federal government agency of the United States.

3.

Jurisdiction over this matter is properly based upon 28 U.S.C. § 1491 and 28 U.S.C. § 1346.  This Complaint states a claim against the United States founded upon an express or implied contract with the United States.

4.

On June 9, 1997, Hurricane Mitch struck Honduras and caused severe infrastructure damage throughout the country.

5.

The Honduras Fund of Social Investment ("FHIS") is a political subdivision of the Honduran government. FHIS issued a solicitation described as "Group 1 works construction of the reconstruction program." This solicitation was awarded to DRC ("Contract"; a copy of the Contract is attached as Exhibit "A").

6.

The Contract was financed with USAID funds.

7.

The USAID issued a Letter of Commitment for this project to DRC. Attached at Exhibit "B" is a copy of this Letter of Commitment. But for the USAID Letter of Commitment, DRC would not have contracted with FHIS.

8.

The Letter of Commitment was duly accepted by DRC.

9.

A contract was formed when DRC accepted the Letter of Commitment.

10.

The Letter of Commitment guaranteed payment of the contract not to exceed $17,667,966.96 to Disaster Relief Contractor, Inc. ("DRC"). This amount was committed in accordance with the terms and conditions specified in the Contract and in the Letter of Commitment.

11.

The Letter of Commitment provided as follows:

> Payment shall be made in accordance with the payment terms and schedules specified in the contract upon presentation to USAID of

the proper documentation as specified in the contract. Payment requests presented to USAID shall be subject to administrative review and approval by USAID for compliance with terms and conditions specified in contract and this Letter of Commitment. Proper documentation shall be presented to the Controller, USAID/Honduras at the address specified in Article 7 below.

See ¶ 2 of the Letter of Commitment attached at Exhibit B.

12.

During the course of this work, DRC submitted several invoices to FHIS for work that it had completed under the Contract. These invoices included invoice nos. 20,21,22, an invoice for mobilization and an invoice for Modification No. 2 to the Contract (together, these invoices are hereinafter referred to as "Invoices"). Together, the Invoices totaled $2,058,101.43. The Invoices bill for the following amounts:

| | |
|---|---|
| Inv. 20 | $232,531.77 |
| Inv. 21 | $445,862.25 |
| Inv. 22 | $605,568.49 |
| Mobilization | $700,713.95 |
| MOD 2 | $ 73,424.97 |
| **TOTAL** | $2,058,101.43 |

13.

The Contract between DRC and FHIS provides that "USAID will make payments directly to the Contractor after approval of all payment documentation by DMI/FHIS." See ¶ 12 of the Contract attached at Exhibit A.

14.

In fact, USAID wrote DRC and specifically told DRC as follows:

We want to remind that USAID acts a financial entity and is not part of the referenced contract.

See Translated letter from USAID to DRC dated August 13, 2002 attached at Exhibit "C."

15.

The Project Engineer representing FHIS and/or USAID approved the Invoices.

16.

FHIS approved the Invoices.

17.

The United States Army Corps of Engineers representatives assisting USAID, approved the Invoices.

18.

By letter dated July 16, 2003, DRC submitted the invoices for Invoice Nos. 19,20,21 and Mobilization, together with all the necessary and required FHIS approvals to USAID for payment as provided by the Letter of Commitment. See Exhibit "D" which includes the cover letter but not the voluminous documentation submitted with the letter.

19.

DRC understands that the U.S. Army Corps of Engineers also submitted these FHIS approved invoices, together with the FHIS approved MOD 2 invoice to USAID for payment.

20.

By letter dated July 27, 2003 (Exhibit "E"), USAID stated as follows:

> As noted in the above-mentioned provision, USAID is required to make payments once the payment documentation is approved by FHIS and sent to USAID. In that sense, once USAID receives any invoice and related payment documentation with clear instructions from FHIS, we will proceed to process the corresponding payments.

21.

The Letter of Commitment only requires the approval of FHIS and does not require submission by FHIS.

22.

As required by the Contract, the payment documentation was approved by DMI/FHIS.

23.

DRC and FHIS have complied with all the terms and conditions specified in the Contract necessary to approve the Invoices for payment.

24.

DRC and FHIS have also complied with any conditions required by the Letter of Commitment required for the payment of these Invoices.

25.

DRC has complied with all the terms and conditions required in the Letter of Commitment necessary for the payment of the Invoices.  FHIS has also complied with any applicable conditions in the Letter of Commitment necessary for the payment of the Invoices.

26.

By letter dated August 28, 2003, DRC complained to USAID and demanded payment. Exhibit "F."

27.

USAID has failed to pay the approved invoices.

## COUNT I – BREACH OF CONTRACT

28.

The Letter of Commitment constituted a Contract between DRC and USAID.

29.

DRC has satisfied all necessary conditions required for the payment of the $2,058,101.43 in the Invoices.

30.

USAID has no justifiable excuse not to pay these amounts as required by the Letter of Commitment.

31.

By refusing to pay these Invoices, USAID has breached the Letter of Commitment.

32.

DRC has been damaged in the amount of $2,058,101.43 and other applicable amounts (including interest) by USAID's refusal to pay in derogation of the clear terms of the contract.

WHEREFORE, DRC respectfully requests this Court to enter judgment in its favor in the amount of $2,058,101.43 plus interest and such other costs and damages as DRC may prove at a trial of this matter. DRC also prays for such other and further relief as this Court determines appropriate and just.

DATED this _____ day of May, 2004.

By: _____

Karl Frederick Dix
(404) 582-8038
(404) 688-0671 -- telecopier)

SMITH, CURRIE & HANCOCK LLP
2600 Harris Tower
233 Peachtree St. N.E.
Atlanta, GA 3030-1530

ATTORNEYS FOR PLAINTIFF DRC, INC.

## RECONSTRUCTION PROGRAM

## CONSTRUCTION CONTRACT

We, **MOISES STARKMAN PINEL**, Honduran, of age, Bachelor in International Relations, domiciled in the city of Comayaguela, Department of Francisco Morazan, who is acting in his condition as Secretary of State and Legal Representative of the Honduran Social Investment Fund (FHIS), according to Agreement No. 017-2000 dated January 27, 2000, a non-concentrated branch of the Presidency of the Republic, created through Decree No. 12-90 dated March 2, 1990, henceforth denominated THE FHIS on one hand and on the other, **WILLIAM SID VOGEL**, of age, Masters Decree in Engineering Science, married, US Citizen, Passport No. 087874294 issued in New Orleans on August 5th 1999, acting in his condition as Executive President of **DRC, INC.**, who henceforth will be denominated the **CONTRACTOR**, have agreed to celebrate , as in fact we do hereby celebrate, this CONTRACT for the execution of the Project: **"GROUP 1 WORKS CONSTRUCTION OF THE RECONSTRUCTION PROGRAM"**, which will be financed with USAID funds (Project No.522-0410.03 and 522-0410.05), which will be ruled by the following dispositions: **FIRST: DEFINITIONS AND INTERPRETATIONS: FHIS**: Honduran Social Investment Fund. **SECRETARY OF STATE:** Secretary of State for FHIS. **USAID:** United States Agency for International Development. **DMI:** Directorate for Major Infrastructure. **DMI Director:** Director of the Employment Generation Unit. **Inspector Engineer:** Civil Engineer registered member of the Engineers Association working for DMI who supervises a work zone. **Supervisor:** Company assigned and contracted by FHIS, which supervises the execution and good quality of the work. **Contractor:** Firm or Consortium of Firms or Companies whose proposal has been accepted by FHIS, for the execution of the Project according to the respective specifications and conditions. **Administrative Delegate:** Contingency works not considered under unit prices which will be paid at cost price plus fifteen percent (15%). **SECOND: THE CONTRACTOR** with the required elements, will supply on his own account, is bind to carry out the Construction Works tasks pertinent to Group 1, in conformity to the specifications, special dispositions and other contractual documents. Such documents annexed, are described in Clause Five and are part of this Contract. **THIRD:AMOUNT OF THE CONTRACT.** The global amount of this contract is **SEVENTEEN MILLION SIX HUNDRED SIXTY SEVEN THOUSAND NINE HUNDRED**

EXHIBIT
A

SIXTY SIX US DOLLARS AND 96/100 (US$17,667,966.96), as detailed in Annex No.1 (Bid Offer), which corresponds to: 1. **Payment for Mobilization** for an amount of **ONE MILLION EIGHT HUNDRED NINETY TWO THOUSAND NINE HUNDRED NINETY SIX US DOLLARS AND 46/100 (US$1,892,966.46)** and 2. **Payment for Execution of Works** for a amount of **FIFTEEN MILLION SEVEN HUNDRED SEVENTY FOUR THOUSAND NINE HUNDRED SEVENTY AND 50/100 (US$15,774,970.50).** **FOURTH: TERM OF SERVICES.** For the execution of the work object of this Contract, the **CONTRACTOR** is bind and committed to finish them to the satisfaction of FHIS within a period or term of **TWELVE (12) CALENDAR MONTHS** counted as of the date in which the Order of Initiation is issued by the DMI Director and according to the Work Program approved by DMI (See Clause Nine). If the works are not executed within the contractual term, FHIS will apply to the **CONTRACTOR**, a fine for each day of delay equivalent to ONE DOLLAR (US$1.00) for each thousand dollars (0.1% of the execution amount) per sub-project, without prejudice of resolution of the contract. If delay is caused by reasons which are not the fault of the CONTRACTOR, FHIS will authorize the extension of the term for a period equal to the justified delay, without liability to the parties. **FIFTH: CONTRACT DOCUMENTS:** THE CONTRACTOR is bind to carry out the works object of this contract according to the following annexed documents which will remain incorporated to this document and forms an integral part of the same just as if they were written within it: 1) This contract, its annexes and any supplement of it. 2) Contract Compliance Guarantee. 3) Bidder's Sworn Statement. 4) Mobilization Expense Payment Guarantee. 5) Good Quality Work Guarantee. 6) Contract Liability Clauses. 7) General Conditions. 8) Special Conditions. 9) Bid detachment. 10) Technical Specifications. 11) Execution Program approved by FHIS. 12) Certified and signed list of quotations on materials received by the contractor in the case of supplies, which must be turned in ten (10) work days after signing the contract. If there are any discrepancies between this contract and the Contract Liability Clauses, that expressed in the Contract Liability Clauses will prevail. **SIXTH: SUPERVISION:** The Engineer Inspector and/or the Supervisor, will have full faculty and authorization to supply the CONTRACTOR, in its case and during the course of the execution of works, those blueprints and additional instructions which result to be necessary for the due and adequate execution of the works, and the CONTRACTOR must comply with the same. **SEVENTH: WARANTIES. The CONTRACTOR** is bind to render the following warranties (guarantees): a) **Mobilization**

<u>Payment Guarantee</u> for an amount equal to one hundred percent (100%) of the amount of the Mobilization Payment, with an in force period up to the date in which the Contractor justifies or cancels the total amount of the mobilization payment, which must be presented by the contractor before payment is made for mobilization. This warranty must be rendered by the contractor within eight (8) work days following subscription of the contract. **b)** <u>**Guarantee for Faithful Compliance of Contract**</u> for an amount equivalent to fifteen percent (15%) of the total amount of the works with an in force period from the initiation of the project up to three (3) months after the term established for execution of the works. This guarantee (warranty) must be rendered by the contractor within eight (8) work days after subscribing to the contract. **c)** <u>**Good Quality Work Guarantee (Warranty),**</u> for an amount equal to five (5) percent of the total amount of the works, which will have a duration of one year as of the date of delivery of the works. **EIGHTH: CONTRACT MODIFICATIONS.** Any modification or change in this Contract will be made in writing and signed by the contracting parties, with prior authorization from USAID. All modifications or changes which are not authorized by USAID, in the amounts and/or work scopes, will not be financed by them. **NINETH: WORK PROGRAM.** THE CONTRACTOR is bind to present and submit for approval on behalf of FHIS, the Definite Work Program and the Disbursement Program no later than fifteen (15) calendar days after subscription to the Contract, until this requirement is fulfilled, no payment procedures will be done to any work estimates. **TENTH: INITIATION ORDER.** Unless otherwise indicated in the INITIATION ORDER, THE CONTRACTOR must initiate works within a term of no more than fifteen (15) calendar days following the date of reception of the INITIATION ORDER, which will be issued by FHIS within ten (10) days following the signing of the contract, and it binds and obligates to proceed to carry it out with promptness and without any delay. **ELEVENTH: MOBILIZATION PAYMENT.** The Contractor may receive an initial payment for concept of Mobilization Expenses, which amount will be specified in his Bid Offer in an independent line of those corresponding to sub-project construction. Mobilization payment will be approved by DMI depending on the type and location of the sub-projects, and may not be more than twelve (12) percent of the works execution cost. Payment procedures for mobilization will be carried out once they are approved by DMI and the CONTRACTOR has rendered the contractual bank and finance guarantees for this concept. THE CONTRACTOR, when receiving payment for Mobilization Expenses, commits and binds to justify, document and submit for approval on

TRANSLATION

behalf of DMI the expenses made under this concept. **TWELTH: PAYMENT PROCEDURE.** Remit to that stipulated in Construction Contract Liability Clauses (Attachments A and B, respectively). In case the contractor is from the United States and requests payment be done in US Dollars, these will be done according to that stipulated in the Construction Contract Liability Clauses. USAID will make payments directly to the Contractor after approval of all payment documentation by DMI/FHIS. **THIRTEENTH: RECOGNITION OF COST INCREASE.** Increase in prices for construction materials, services and/or labor used or consumed directly in the works and fully proven through the corresponding documentation, given after three (3) months after the date of signing the construction contract will be acknowledged to the CONTRACTOR, through a previous written and justified request, presented to FHIS and accepted by it. The Contractor must present to FHIS a claim for price increases which has occurred after three (3) months of having signed the contract, within a period of thirty (30) days as of the date in which the increase occurred, after this period of time he will lose all right to claim. For the above effects FHIS will elaborate the list of materials and services which will be used in the sub-project and which will be object to said acknowledgement. This price list will be supported by quotations from commercial establishments or any other type of document which demonstrates without doubt the veracity of the same. THE CONTRACTOR must give all facility and documentation in the manner in which FHIS deems convenient to prove the price increases. **FOURTEENTH: LIMIT TO TOTAL AMOUNT OF THE WORKS.** The amount of all the increases to the works, including increases in the work and prices, may not exceed thirty (30) percent of the original amount. **FIFTEENTH: RETENTION.** From the monthly payments, five (5) percent will be held (retained) as a guarantee for default work and will be reimbursed to the Contractor when FHIS has accepted the works. **SIXTEENTH: SIGN PLACEMENTS:** THE CONTRACTOR must place at his own expense at the work sites, three (3) signs mounted on round cured wooden posts of six (6) inches diameter minimum or cured wood of six by six (6x6) inches, will all security and durability, fully visible according to the dimensions and characteristics of the sign format. **SEVENTEENTH: EMPLOYMENT OF COMMUNITY MEMBERS.** THE CONTRACTOR and other individual or social companies contracted by FHIS, are bind to employ people belonging to the benefited communities without discriminating women. If the Contractor has problems contracting his personnel with people belonging to the community, he can contract said personnel outside of the same, after authorization from the DMI

Director, when this is not administrative personnel. **EIGHTEENTH: RESIDING ENGINEER.** THE CONTRACTOR must maintain at least one Residing Engineer per work zone, for the execution of the works of this contract until they are finished, and in addition, during an additional person which the Engineer Supervisor deems necessary, for the due compliance of the Contractors obligations. The Residing Engineer (Civil Engineer, registered member of the association of Engineers), must be dedicated full time to the execution of the works. **NINETEENTH: TAXES, EXHONERATIONS.** Execution of the Project is exempt from taxes and encumbrances. **TWENTIETH: ORIGIN OF GOODS AND SERVICES.** THE CONTRACTOR must present certification that his company and the goods and services used in the Project are of Honduran origin and/or from the United States. **TWENTY FIRST: DELAYS AND CLAIMS.** 1). Notification of Delays: THE CONTRACTOR is bind to report in writing to FHIS or its representative, the happening of any matter or circumstance which might delay or impede the normal development or finalization of works object of this contract within the stipulated term. THE CONTRACTOR will inform, in addition, on measures taken to correct or attend said situation. It is understood that the CONTRACTOR, within three (3) days following after delay has begun, will notify FHIS in writing, explaining the causes of the same. The latter will evaluate the matters and scope of the delay and will communicate the contractor within a reasonable period of time of his decision to the effect. **TWENTY SECOND: RESOLUTION AND TERMINATION OF THE CONTRACT.** 1) FHIS may, without liability whatsoever, terminate the Contractor's right to proceed with the execution of the contracted works due to the following causes: a) In case of evident negligence on behalf of the Contractor in the execution of the works. b) If he executes the works in an inadequate manner, or if he interrupts the continuity of the works, or due to any other causes does not develop the works in an acceptable and diligent manner, negligence will be proven through sentence or reports from the Supervisor and will be evaluated by FHIS. c) If he withdraws equipment without due authorization from the FHIS representatives. d) If within the period which FHIS has established, he does not present cautions or extension of the same to which he is obligated, in conformity to this contract. e) If he commits dolus or guilty actions in prejudice of the Public Treasury, or in prejudice of the execution of the contracted works according to the judgment and qualification of FHIS. f) If he does not comply with any of the obligations contracted through this contract.. **TWENTY THIRD: LABOR LIABILITY.** The CONTRACTOR will be the sole responsible for payment of labor obligations

resulting from the contracting of personnel for the Project execution. Therefore, he must face and solve all labor problems which arise during and after the construction of the works. **TWENTY FOURTH: COMMITMENTS AND OBLIGATIONS OF THE CONTRACTOR.** THE CONTRACTOR commits and is bind by this actions to offer cooperation so that the project is carried out according to the original program and to attend the recommendations that for the correct execution of the works are presented to him by FHIS employees and officials. **TWENTY FIFTH: LEGAL EFFECTS OF USAID APPROVAL.** This contract will be financed by USAID funds, which reserves the right to approve the terms of this contact, the CONTRACTOR and any or all blueprints, reports, specifications, sub-contracts, bid documents, designs or other documents related to this Contract. The parties also understand and agree that USAID when reserving any or all of the previous approval rights, is acting only as a financial entity, to assure adequate use of the funds supplied by the Government of the United States and any decision of USAID to execute or not execute these approval rights, will do so in its condition as financial entity within the financing course of this project, and should not be interpreted as if USAID, is part of this Contract. The parties understand and agree that USAID may eventually, cover matters related to these rights and with the project of which this contract is a part of, without incurring in any legal responsibility or obligation whatsoever in respect to the parties. Any approval (or omission to disapprove) on behalf of USAID will not impede FHIS or USAID to make valid their rights, nor does it relieve the Contractor from any obligation that he might have as to FHIS or USAID. **TWENTY SIXTH: SOLUTION OF CONTROVERSIES AND DISPUTES.** Remit to that stipulated in the Construction Contract Liability Clauses. **TWENTY SEVENTH: BOOKS AND REGISTRIES.** In order to assure compliance with the requirements of the contract, such as sources and origin of materials, equipment and services used, amounts of tax exemptions, excluding costs and other requirements, the contractor should maintain adequate books and registries concerning transactions under the Contract and will make them available to the FHIS representative and to USAID, duly authorized for their inspection and auditing, during the term of the contract and for a period of three (3) years as of the date of the last payment under the contract. **TWENTY EIGHTH:  CESION AND SUB-CONTRACTING.** The CONTRACTOR may not cede his obligation to comply with that stipulated in this contract, nor ub-contract  to  third parties without previous consent in writing from FHIS and USAID. **TWENTY NINETH:** Once each sub-project which compose the Project is completed, these will

**TRANSLATION**

be turned over to the benefited **Municipalities** after the acceptance of these. **THIRTIETH: FINANCING.** The total financing of this Contract will be through funds from the Reconstruction Program, Donation Agreement 522-0410.03 and 522-0410.05. **THIRTY FIRST: ANTI CORRUPTION:** No offer, payment, consideration or benefit of any type which constitutes a corrupt or illegal practice should take place, either direct or indirectly, as an incentive or reward for the allocation of this contract. Any of these practices will lead to the cancellation or non-allocation of the contract and for any additional action, either civil or criminal, which is required. **THIRTY SECOND: ACCEPTANCE.** The parties accept the above stipulations and do sign this contract in the city of Tegucigalpa, M.D.C. on the twenty first day of the month of June of the year two thousand.

**WILLIAM SID VOGEL**
**Executive President DRC, Inc.**

**MOISES STARKMAN PINEL**
**Secretary of State – FHIS**

**CARLOS ROBERTO FLORES**
**President of the Republic**
**Honorary Witness**

**AMHON REPRESENTATIVE**

**PAUL TRIVELLI**
**Councelor Minister**
**US Embassy**
**Honorary Witness**



# PRESIDENCIA DE LA REPUBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

## PROGRAMA DE RECONSTRUCCION

## CONTRATO DE CONSTRUCCION

Nosotros, **MOISES STARKMAN PINEL**, hondureño, mayor de edad, Licénciado en Relaciones Internacionales, con domicilio en la Ciudad de Comayaguela, Departamento de Francisco Morazán, quien actúa en su condición de Ministro y Representante Legal del Fondo Hondureño de Inversión Social (FHIS), según Acuerdo No. 017-2000 de fecha 27 de Enero de 2000, Institución desconcentrada de la Presidencia de la República, creada mediante Decreto No. 12-90 de fecha 2 de Marzo de 1990, denominado de aquí en adelante EL FHIS por una parte y por la otra **WILLIAM SID VOGEL**, mayor de edad, con Master en Ciencias de Ingeniería Civil, casado, nacionalidad norteamericana, Pasaporte No. 087874294 emitido en New Orleans el 5 de Agosto de 1999, actuando en su condición de Presidente Ejecutivo de la Empresa **DRC, INC.**, quien en lo sucesivo se denominará el **CONTRATISTA** hemos convenido celebrar, como en efecto celebramos, el presente CONTRATO para la ejecución del Proyecto: **"CONSTRUCCION DE OBRAS DEL GRUPO I DEL PROGRAMA DE RECONSTRUCCION"**, el que se financiará con fondos USAID ( Proyecto No.522-0410.03 Y 522-0410.05), y se regulará por las disposiciones siguientes: **PRIMERA: DEFINICIONES E INTERPRETACIONES: FHIS:** Fondo Hondureño de Inversión Social. **Ministro :** Ministro del FHIS. **USAID:** Agencia de los Estados Unidos de América para el Desarrollo Internacional. **DIM:** Dirección de Infraestructura Mayor. **Director DIM:** Director de la Unidad Generación de Empleo. **Ingeniero Inspector:** Ingeniero Civil colegiado dependiente de la DIM que supervisa una zona de trabajo. **Supervisor:** Empresa nombrada y contratada por el FHIS, que supervisa la ejecución y buena calidad de la obra. **Contratista:** Firma o Consorcio de Firmas o Compañía cuya propuesta ha sido aceptada por el FHIS, para ejecutar el Proyecto de acuerdo a las especificaciones y condiciones respectivas. **Administración Delegada:** Trabajos contingenciales no considerados bajo precios unitarios que se pagarán al costo más quince (15) por ciento. **SEGUNDA: El CONTRATISTA** con elementos suficientes, que suministrará





# PRESIDENCIA DE LA REPÚBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

por su cuenta, se obliga a realizar los trabajos de Construcción de Obras pertenecientes al Grupo I, de conformidad con las especificaciones, disposiciones especiales y demás documentos contractuales. Tales documentos anexos, están descritos en la Cláusula Quinta y forman parte de éste contrato. **TERCERA: MONTO DEL CONTRATO.** El valor global de éste contrato es de **DIECISIETE MILLONES SEISCIENTOS SESENTA Y SIETE MIL NOVECIENTOS SESENTA Y SEIS DOLARES AMERICANOS CON 96/100 (US$. 17,667,966.96)**, según el detalle que aparece en el Anexo No.1 (Oferta), y que corresponde a : **1. Pago por Movilización** por un monto de **UN MILLON OCHOCIENTOS NOVENTA Y DOS MIL NOVECIENTOS NOVENTA Y SEIS DOLARES AMERICANOS CON 46/100 (US$. 1,892,996.46)** y **2. Pago por Ejecución de la Obra** por un monto de **QUINCE MILLONES SETECIENTOS SETENTA Y CUATRO MIL NOVECIENTOS SETENTA DOLARES AMERICANOS CON 50/100 (US$. 15,774,970.50).** **CUARTA: PLAZO DE LOS SERVICIOS.** Para la ejecución de los trabajos objeto de éste contrato el **CONTRATISTA** se compromete y obliga a terminar a satisfacción del FHIS en el plazo de **DOCE (12) MESES CALENDARIO** contados a partir de la fecha en que se emita la Orden de Inicio por el Director DIM y de acuerdo al Programa de Trabajo aprobado por la DIM (Ver Cláusula Novena). Si la obra no se ejecutaré en el plazo programado, el FHIS aplicará al **CONTRATISTA**, una multa por cada día de retraso equivalente a UN DOLAR (US$1.00) por cada millar de dolares (0.1% del monto de ejecución) por subproyecto, sin perjuicio de la resolución del contrato. Si la demora se produjere por causas no imputables al CONTRATISTA, el FHIS autorizará la prórroga del plazo por un tiempo igual al del atraso justificado, sin responsabilidad de las partes. **QUINTA: DOCUMENTOS DEL CONTRATO:** El CONTRATISTA se obliga a efectuar las obras objeto de este contrato de acuerdo con los siguientes documentos anexos, que quedan incorporados a éste documento y forman parte integral del mismo tal como si estuvieran escritos en él: 1) Este contrato, sus anexos y cualquier suplemento de él. 2) Garantía de Cumplimiento de Contrato. 3) Declaración Jurada del Licitante. 4) Garantía para el Pago de Gastos por Movilización, 5) Garantía de Buena Calidad de Obra. 6) Cláusulas Obligatorias del Contrato 7) Condiciones Generales. 8) Condiciones Especiales. 9) Desglose de Oferta 10) Especificaciones Técnicas. 11) Programa de Ejecución aprobado por el



## PRESIDENCIA DE LA REPUBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

FHIS. 12) Lista certificada y firmada de cotizaciones sobre materiales recibidos por el contratista en caso de suministro, la que deberá entregar diez (10) días hábiles después de la firma del contrato. En caso de haber discrepancias entre este contrato y las Cláusulas Obligatorias del Contrato, privara lo expuesto en las Cláusulas Obligatorias del Contrato. **SEXTA: SUPERVISION.** El Ingeniero Inspector y/o el Supervisor, tendrán plena facultad y autorización para suministrar al CONTRATISTA, en su caso y durante el curso de ejecución de las obras, aquellos planos e instrucciones adicionales que resulten necesarios para la debida y adecuada ejecución de las obras, y el CONTRATISTA deberá dar cumplimiento a los mismos. **SEPTIMA: GARANTIAS. El CONTRATISTA** se obliga a rendir las siguientes garantías: a) **Garantía de Pago por Movilización,** por una cantidad igual al cien (100) por ciento del monto del pago por movilización, con vigencia hasta la fecha en que el Contratista justifique o liquide el monto total del pago por movilización, la cual deberá ser presentada por el contratista antes de hacerse efectivo el pago por movilización. Esta garantía deberá ser rendida por el contratista dentro de los ocho (8) días hábiles siguientes a la suscripción del contrato. b) **Garantías de Fiel Cumplimiento de Contrato** por una suma equivalente al quince (15) por ciento del monto total de la obra con vigencia desde el inicio del proyecto hasta tres (3) meses después del plazo previsto para la ejecución de las obras. Esta garantía deberá ser rendida por el contratista dentro de los ocho (8) días hábiles siguientes a la suscripción del contrato. c) **Garantía de Buena Calidad de Obra,** por una cantidad igual al cinco (5) por ciento del monto total de la obra, la cual tendrá una duración de un año a partir de la fecha de entrega de la obra. **OCTAVA: MODIFICACIONES DE CONTRATO.** Cualquier modificación o cambio del presente contrato se hará por escrito y firmado por las partes contratantes, previa aprobación de la USAID. Toda modificación o cambio no aprobado por la USAID, en los montos y/o alcances de las obras, no será financiado por ésta. **NOVENA: PROGRAMA DE TRABAJO.** El CONTRATISTA se obliga a presentar y someter a aprobación del FHIS, el Programa de Trabajo Definitivo y el Programa de Desembolsos a más tardar quince (15) días calendario después de suscrito éste contrato, mientras no se haya cumplido con éste requisito no se le dará trámite de pago a ninguna estimación de obra. **DECIMA: ORDEN DE INICIO.** A menos que se



# PRESIDENCIA DE LA REPÚBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

indique otra cosa en la ORDEN DE INICIO, EL CONTRATISTA deberá de dar inicio a las obras dentro de un plazo no mayor a los quince (15) días calendario siguientes a la fecha de recibida la ORDEN DE INICIO, la que será emitida por el FHIS dentro de los diez (10) días siguientes a la firma del contrato, y se compromete y obliga a proceder a su realización con la debida prontitud y sin demora alguna. **UNDECIMA: PAGO POR MOVILIZACION.** El CONTRATISTA podrá recibir un pago inicial por concepto de Gastos para Movilización, cuyo monto estará especificado en su Oferta de Licitación en un renglón independiente de los correspondientes a la construcción de los subproyectos. El pago por Movilización será aprobado por la DIM dependiendo del tipo y localización de los subproyectos, y no podrá ser mayor del doce por ciento (12%) del costo de ejecución de las obras. El trámite de pago por movilización se realizará una vez que sea aprobado por la DIM y que el CONTRATISTA haya rendido las garantías bancarias o fianzas contractuales por este concepto. El CONTRATISTA al recibir el pago para Gastos de Movilización se compromete y obliga a justificar, documentar y someter a aprobación de la DIM los gastos realizados bajo este concepto. **DUODECIMA: PROCEDIMIENTO DE PAGO.** Remitirse a lo estipulado en la Cláusulas Obligatorias del Contrato de Construcción (Adjuntos A y B, respectivamente). En caso de que el Contratista sea de origen de los Estados Unidos de América y éste solicite que sus pagos se efectúen en US$. (Dólares Americanos), estos se harán de acuerdo a lo estipulado en la Cláusulas Obligatorias del Contrato de Construcción. La USAID hará los pagos directamente al Contratista previa aprobación de toda la documentación de pago por parte de DIM/FHIS. **DECIMA TERCERA: RECONOCIMIENTO DE AUMENTO DE COSTOS.** Las alzas en los precios de los materiales de construcción, servicios y/o mano de obra usados o consumidos directamente en la obra y plenamente comprobados mediante la documentación correspondiente, que se den con posterioridad a tres (3) meses después de la fecha de la firma del contrato de construcción serán reconocidos al CONTRATISTA, previa solicitud escrita y justificada, presentada al FHIS y aceptada por este. El Contratista deberá presentar al FHIS el reclamo por alza de precios que haya ocurrido con posterioridad a los tres (3) meses después de la fecha de la firma del contrato, dentro del período de treinta (30) días a partir de la fecha que se presentare el aumento, transcurrido este plazo perderá todo derecho

4



# PRESIDENCIA DE LA REPUBLICA
# FONDO HONDUREÑO DE INVERSION SOCIAL

a reclamo. Para los efectos anteriores el FHIS elaborará la lista de los materiales y servicios que se utilizarán en el subproyecto y que serán objeto de dicho reconocimiento. Este listado de precios será respaldado por cotizaciones de casas comerciales o cualquier otro tipo de documento que demuestre fehacientemente la veracidad del mismo. El CONTRATISTA deberá dar todas las facilidades y las documentaciones en la forma que el FHIS estime conveniente para comprobar los aumentos de precios. **DECIMA CUARTA: LIMITE AL MONTO TOTAL DE LA OBRA.** La suma de todos los incrementos a la obra, incluidos los aumentos de obra y de precios, no podrán superar el treinta (30) por ciento del monto original. **DECIMA QUINTA: RETENCION.** De los pagos mensuales se retendrá el cinco (5) por ciento en carácter de garantía por trabajo defectuoso y se devolverá al Contratista hasta que el FHIS haya aceptado la obra. **DECIMA SEXTA: COLOCACION DE ROTULOS:** El CONTRATISTA deberá colocar a su costo en los lugares de trabajo, tres (3) rótulos montados en postes rollizos de madera curada de seis (6) pulgadas de diámetro mínimo o madera curada de seis por seis (6X6) pulgadas, con toda seguridad y durabilidad, plenamente visibles de acuerdo a las dimensiones y características del formato de rótulo. **DECIMA SEPTIMA: EMPLEO DE MIEMBROS DE LA COMUNIDAD.** El CONTRATISTA y las demás empresas individuales o sociales que contrate el FHIS, se comprometen a emplear a personas pertenecientes a las comunidades beneficiadas sin discriminación de la mujer. Si el Contratista tuviera problemas para contratar su personal con personas pertenecientes a la comunidad, éste podrá contratar dicho personal fuera de la misma, previa autorización del Director de la DIM, cuando no se trate de personal administrativo. **DECIMA OCTAVA: INGENIERO RESIDENTE.** El CONTRATISTA deberá mantener por lo menos un Ingeniero Residente por zona de trabajo, para la ejecución de las obras de éste contrato hasta terminarlas, y además durante un tiempo adicional que el Ingeniero Supervisor considere necesario, para el debido cumplimiento de las obligaciones del Contratista. El Ingeniero Residente (Ingeniero Civil colegiado), deberá estar al cien por ciento dedicado a la ejecución de la obra. **DECIMONOVENA: IMPUESTO, EXONERACIONES.** La ejecución del Proyecto está exenta de impuestos y gravámenes. **VIGESIMA: PROCEDENCIA DE LOS BIENES Y SERVICIOS.** El CONTRATISTA deberá presentar certificación de que su empresa y



## PRESIDENCIA DE LA REPUBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

los bienes y servicios utilizados en el Proyecto son de origen de Honduras y/o los Estados Unidos de América. **VIGESIMA PRIMERA: DEMORAS Y RECLAMOS.** I) Notificación de Demoras: El CONTRATISTA se compromete a informar por escrito al FHIS o a su representante, el acaecimiento de cualquier hecho o circunstancia que pudiese demorar o impedir el normal desarrollo o terminación del trabajo objeto de este contrato en el plazo estipulado. El CONTRATISTA informará, asimismo de las medidas que se han tomado para corregir o atender dicha situación. Queda entendido que el CONTRATISTA, dentro de los tres (3) días subsiguientes de que se inicie una demora, lo notificará al FHIS por escrito, explicando las causas de la misma. Este último evaluará los hechos y alcances de la demora y comunicará al contratista dentro de un período razonable de tiempo su decisión al respecto. **VIGESIMA SEGUNDA: RESOLUCION O TERMINACION DEL CONTRATO.** 1) EL FHIS podrá sin responsabilidad alguna dar por terminado el derecho del Contratista para proseguir la ejecución de la obra contratada por las siguientes causas: a) En caso de evidente negligencia del Contratista en la ejecución de los trabajos. b) Si ejecuta los trabajos en forma inadecuada, o si interrumpe la continuidad de la obra, o por cualquiera otras causas no desarrolla el trabajo en forma aceptable y diligente, la negligencia se comprobará con dictámenes e informes del Supervisor y será evaluada por el FHIS. c) Si retirare el equipo sin la debida autorización de los representantes del FHIS. d) Si dentro del plazo que el FHIS le hubiese fijado, no presentare las cauciones o ampliaciones de las mismas a que está obligado, conforme éste contrato. e) Si cometiese actos dolosos o culposos en perjuicio de la Hacienda Pública, o en perjuicio de la ejecución de los trabajos contratados a juicio y calificación del FHIS. f) Si dejare de cumplir con cualesquiera de las obligaciones que contrae en éste contrato. **VIGESIMA TERCERA: RESPONSABILIDAD LABORAL.** El CONTRATISTA será el único responsable del pago de las obligaciones laborales que se deriven de la contratación del personal para la ejecución del Proyecto. Por consiguiente deberá afrontar y solucionar todos los problemas de tipo laboral que se presentaren durante y después de la construcción de la obra. **VIGESIMA CUARTA: COMPROMISOS Y OBLIGACIONES DEL CONTRATISTA.** El CONTRATISTA se compromete y obliga por este acto a prestar cooperación para que el proyecto se realice de acuerdo al programa original y atender las

6

# PRESIDENCIA DE LA REPUBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

recomendaciones que para la correcta ejecución de la obra le hagan los empleados o funcionarios del FHIS. **VIGESIMA QUINTA: EFECTOS LEGALES DE APROBACION DE LA USAID.** Este contrato será financiado con fondos de la USAID, la que se reserva derechos de aprobar los términos de éste contrato, el CONTRATISTA y cualquier o todos los planos, informes, especificaciones, subcontratos, documentos de licitación, diseños u otros documentos relacionados con éste contrato. Las partes además comprenden y convienen que la USAID al reservarse cualquier o todos los derechos de aprobación anterior, obra solamente como entidad financiera, para asegurar el uso adecuado de los fondos suministrados por el Gobierno de los Estados Unidos de América y que cualquier decisión de la USAID para ejercer o abstenerse de ejercer estos derechos de aprobación, lo hará en su calidad de entidad financiera en el curso de financiamiento de este proyecto, y no deberá interpretarse como que la USAID, es parte del presente contrato. Las partes comprenden y convienen en que la USAID podrá eventualmente, tratar asuntos relacionados con estos derechos y con el proyecto del que éste contrato es parte, sin que con ello incurra en responsabilidad u obligación legal alguna respecto a las partes. Cualquier aprobación (u omisión de desaprobación) por parte de la USAID no impedirá que el FHIS o la USAID hagan valer cualquier derecho, ni releva al Contratista de cualquier obligación que pudiera tener respecto al FHIS o la USAID. **VIGESIMA SEXTA: SOLUCIONES DE CONTROVERSIAS Y DISPUTAS.** Remitirse a lo estipulado en las Cláusulas Obligatorias del Contrato de Construcción. **VIGESIMA SEPTIMA: LIBROS Y REGISTROS.** Para asegurar el cumplimiento de los requisitos del contrato, tales como fuentes y origen de los materiales, equipo y servicios utilizados, montos de exención de impuestos, excluyendo costos y otros requerimientos, el contratista deberá mantener libros y registros adecuados concernientes a las transacciones bajo el Contrato y los pondrá a disposición del representante del FHIS y a los de la USAID, debidamente autorizados para su inspección y auditoría, durante el término del contrato y por un período de tres (3) años contados de la fecha del último pago bajo el contrato. **VIGESIMA OCTAVA: CESION Y SUBCONTRATACION.** EL CONTRATISTA no podrá ceder su obligación de cumplir lo estipulado en este contrato, ni subcontratar a terceros sin contar con el consentimiento previo y por escrito del FHIS y de la USAID. **VIGESIMA**

7



# PRESIDENCIA DE LA REPUBLICA
## FONDO HONDUREÑO DE INVERSION SOCIAL

**NOVENA:** Una vez finalizado cada uno de los subproyectos que conforman el Proyecto, estos serán entregados a las Municipalidades beneficiadas previa aceptación por estas. **TRIGESIMA FINANCIAMIENTO :** El financiamiento total de este Contrato será con fondos del Programa de Reconstrucción, Convenio de Donación 522-0410.03 y 522-0410.05. **TRIGESIMA PRIMERA ANTICORRUPCION :** Ninguna oferta, pago, consideración o beneficio de cualquier tipo que constituye una práctica corrupta o ilegal deberá llevarse a cabo, ya sea directa o indirectamente, como incentivo o recompensa por la adjudicación de este contrato. Cualquiera de estas prácticas será motivo de cancelación o no adjudicación del contrato y para cualesquier otra acción adicional, ya sea civil y o criminal, que sea necesaria. **TRIGESIMA SEGUNDA:** ACEPTACION. Las partes aceptan las anteriores estipulaciones y firman el presente contrato en la ciudad de Tegucigalpa, M.D.C., a los veintiún días del mes de junio del año dos mil.

**WILLIAM SID VOGEL**
PRESIDENTE EJECUTIVO DRC, Inc.

**MOISES STARKMAN PINEL**
MINISTRO - FHIS

**CARLOS ROBERTO FLORES**
PRESIDENTE DE LA REPUBLICA
TESTIGO HONORARIO

**REPRESENTANTE DE AMHON**

**PAUL TRIVELLI**
MINISTRO CONSEJERO DE LA EMBAJADA
DE LOS E.E.U.U. DE AMERICA
TESTIGO HONORARIO

ANEXO

FHIS/USAID
PROGRAMA DE DESARROLLO MUNICIPAL
FONDOS DE DONACION USAID No. 522-0410.

## LICITACION DE CONSTRUCCION DE OBRAS DE AGUA Y SANEAMIENTO (GRUPO I)

| No. | DEPTO/MUNICIPIO | TIPO DE PROYECTO | MONTO EN US DOLARES |
|---|---|---|---|
| | **ZONA GEOGRAFICA I** | | |
| | ATLANTIDA | | |
| 1 | 1. LA CEIBA (Col. 28 de Junio-(Búfalo)) | | |
| 2 | 2. TELA (Col.Beatriz Theabaud/Bo.Terencio Sierra y Hilland Creek) | SP | 200,108.35 |
| | COLON | AS | 337,859.87 |
| 3 | 1. SANTA FE(Mej.AP Sta.Fe/Mej.San.Bas.Sta.Fe, Guadalupe, San Antonio y Betulia) | | |
| 4 | 2. TOCOA (La Ceibita) | AP | 86,957.17 |
| 5 | 3. TOCOA (Linea y Red Distribución) | SP | 711,616.90 |
| 6 | 4. TRUJILLO | AP | 543,916.46 |
| | | AS | 2,095,558.32 |
| | **ZONA GEOGRAFICA II** | | |
| | CORTES | | |
| 7 | 1. OMOA (Cuyamel) | | |
| 8 | 2. PTO.CORTES(Bajamar,Playa Grande,El Estero, Titabie, Travesia, Chifia) | AP | 1,244,156.25 |
| 9 | 3. PUERTO CORTES (Red Alta-II Etapa) | AP | 586,333.20 |
| 10 | 4. PUERTO CORTES (Canales DP III Etapa) | AP | 997,588.69 |
| 11 | 5. STA. CRUZ DE YOJOA | DP | 1,539,906.01 |
| 12 | 6. VILLANUEVA (Col. Brisas del Rosario) | AS | 775,662.46 |
| 13 | 7. VILLANUEVA (Col. Villas del Rio/ Est.Elevadora) | AS | 154,913.22 |
| 14 | 8. VILLANUEVA (Col. Gracias a Dios y Llanos del Canada) | AS | 174,150.48 |
| 15 | 9. VILLANUEVA (Bo. Victoria) | AS | 346,195.50 |
| 16 | 10. VILLANUEVA (Aldea 2 Caminos,Col.Sinai, Los Angeles,El Milagro y Melgar Castro) | AP | 204,203.78 |
| | YORO | AP | 957,170.76 |
| 17 | 2. EL PROGRESO (Paluiles) | | |
| | | SP | 1,804,585.92 |
| | **ZONA GEOGRAFICA III** | | |
| | CHOLUTECA | | |
| 18 | 1. CHOLUTECA(Limón de la Cerca) | | |
| 19 | 2. CHOLUTECA(Limón de la Cerca) | AP | 431,771.60 |
| 20 | 3. CHOLUTECA (Sector Oeste)-Ampliación Planta de Tratamiento | AS | 1,018,536.04 |
| | EL PARAISO | AS | 298,224.90 |
| 21 | 1. MOROCELI(Nueva Esperanza. Ojo Agua) | | |
| | OLANCHO | SP | 480,603.44 |
| 22 | 1. JUTICALPA(Colectores y Redes El Castaño y La Hoya) | | |
| | | AS | 784,949.19 |
| | SUB -TOTAL EN DOLARES | | 15,774,970.50 |
| | MOVILIZACION EXPRESADO EN DOLARES | | 1,892,996.46 |
| | TOTAL GENERAL EN DOLARES | | 17,667,966.96 |

APR.26'2004 09:53 2513435554                  DRC, INC.                    #0268 P.002/004
01/05/01  FRI 18:09 FAX 504  235 8585    D.R.C. INC.                              图001

## LETTER OF COMMITMENT

December 05, 2000

Disaster Relief Contractor Inc (DRC)
Res. Lomas del Guijarro Ave. República Dominicana
Calle Principal. Casa #3357
Tegucigalpa, Honduras, C.A.

Re:     Commitment No.:       522-0410-02
        Amount:               $ 17,667,966.96
        Contract:             Construction Work for Group I
                              Bid No. PDM 001-2000. Dated: June 21,
                              2000.
        Agency:               Fondo Hondureño de Inversion Social (FHIS)
                              (Honduran Social Investment Fund (FHIS))

Gentlemen:

1. **Guarantee:** At the request of the Government of the Republic of Honduras, acting through the Honduran Social Investment Fund (FHIS), the Administrator of the United States Agency for International Development (hereinafter "USAID"), acting for the United States of America, under the Foreign Assistance Act of 1961 as amended, hereby guarantees payment not to exceed $ 17,667,966.96 to Disaster Relief Contractor Inc (DRC) (hereinafter the "Contractor") to cover US dollar costs up to this amount in accordance with the terms and conditions specified in the contract noted above and in this Letter of Commitment.

2. **Payment:** Payment shall be made in accordance with the payment terms and schedule specified in the contract upon presentation to USAID of the proper documentation as specified in the contract. Payment requests presented to USAID shall be subject to administrative review and approval by USAID for compliance with terms and conditions specified in the contract and this Letter of Commitment. Proper documentation shall be presented to the Controller, USAID/Honduras at the address specified in Article 7 below.

   Payments will be made by US Treasury Check payable to the Contractor and available for pick-up at the USAID Controller's Office in Tegucigalpa, Honduras or directly deposited to a U.S. bank specified by the Contractor and acknowledged by


EXHIBIT
B

APR.26'2004 09:53 2513435554                DRC, INC.                      #0268 P.003/004
01/05/01  FRI 13:09 FAX 604  Z35 8565      D.R.C. INC.

USAID.  Initially payments will be held for pick-up by the Contractor's authorized representative at the USAID Controller's Office in Tegucigalpa, Honduras.

3. **Expiration:** All goods shall be delivered and services performed no later than July 11, 2001, in accordance with the delivery schedule and terms and conditions as specified in the contract and as it may be amended from time to time.  All requests for payment supported by proper documentation must be received by USAID/Honduras by December 31, 2001.

4. **Amendments:** The financial responsibility of USAID under this Letter of Commitment is limited to the amount stated in Article 1 and to the terms and conditions of the contract as of the date of the contract.  With regard to any amendment of the contract which affects the level and/or use of USAID funds or changes the expiration date of the contract, payment hereunder is contingent upon written approval by USAID of such amendment.  Approval by USAID of any such contract amendment will be indicated by the issuance of an amendment to this Letter of Commitment.  Extensions of this Letter of Commitment beyond the original expiration date, if for a year or less can be made by USAID in Tegucigalpa, Honduras.  Extensions for more than a year require approval obtained through the USAID Office in Washington, D.C., USA.

5. **Assignment:** Funds due or to become due from USAID under this Letter of Commitment may be assigned only in accordance with the provisions of the US Code concerning Assignment of Claims.

6. **Bills of Collection:** Pursuant to authority granted to USAID under Section 640A (B) of the Foreign Assistance Act of 1961 (22 USC Section 2399b), USAID may deduct from and set off against payments specified in Paragraph 2 above, any amounts owed by you to USAID and covered by USAID bills of collection.

7. **Communications with USAID:**  All communications regarding this Letter of Commitment shall be addressed or delivered to:

|  US Postal Address  |  Street Address  |
|---|---|
| Controller, USAID/Honduras | USAID / c.o. US Embassy |
| UNIT 2927 | Avenida La Paz |
| APO  AA 34022-3480 | Tegucigalpa, Honduras |

8. **Acceptance:** This Letter of Commitment shall become effective upon acceptance of the terms and conditions set forth above, which shall be indicated by your signing and returning a copy of this Letter to the address indicated in Paragraph 7 above.

Sincerely

Administrator, United States Agency
for International Development

By

Richard Layton
Controller, USAID/Honduras

ACCEPTANCE:  Disaster Relief Contrator Inc. (DRC)

By:_____ Title:_____ Date:_____

## US AGENCY FOR INTERNATIONAL DEVELOPMENT
### USAID/Honduras

Tegucigalpa M.D.C.
August 13, 2002

Mr.
Ronald V. Curtis
Director RECAPS
His Office

Re.: *Payment estimates Nr. 19 and 20 to DRC*

Dear Mr. Curtis,

We acknowledge receipt of your note dated July 31, 2002, by means of which you remit the bill corresponding to the payment estimates Nr. 19 and 20 of the building contract for "Grupo 1" and in which, at the same time, USAID is asked to solve matters stated in said letter.

Likewise we acknowledge receipt of your letter dated August 08, 2002 in which it is indicated that, in order to carry out the order given by the Civil Court of First Instance of Francisco Morazán when the corresponding check is written, failing better opinion, USAID must retain payment or deposit it at the Court mentioned before.

We want to remind that USAID acts a financial entity and is not part of the referred contract. In such sense, we ask to be sent specific and clear instructions about the process to be followed, accompanied by the approval of the FHIS Legal Department for such effects. Attached we send the bills mentioned above.

The aforementioned will allow us to ensure that USAID is not participating in an inappropriate action contrary to what has been established in the Court Order emitted by the Civil Court of First Instance of Francisco Morazán on May 20, 2002.

With no more items to discuss, respectfully yours,

Mauricio Cruz
Jefe de Ingenieria *(Head of Engineering)*
Oficina de Desarrollo Municipal
e Iniciativas Democráticas *(Office for Municipal Development and Democratic Initiatives)*

Cc:    Mr. Alfredo Zelaya, FHIS
       Mr. Hostilio Lopez, Legal Department FHIS
       Annette Tuebner, USAID
       Denis Figueroa, USAID
       Mr. Mario Bu, RECAPS
       Mr. John Sloke, DRC, Inc.

3



EXHIBIT
C

APR.27'2004 13:55 2513435554          DRC, INC.                    #0319 P.004/010

 **US AGENCY FOR INTERNATIONAL DEVELOPMENT**
USAID/Honduras

Tegucigalpa, M.D.C.
13 de agosto de 2002

Señor
Ronald V. Curtis
Director RECAPS
Su Oficina

*Ref: Estimaciones de Pago No. 19 y 20 de DRC*

Estimado señor Curtis:

Acusamos recibo de su nota fechada 31 de julio de 2002 mediante la cual se nos remiten las facturas correspondientes a las estimaciones de pago No. 19 y 20 del contrato de construcción de obras del Grupo I y en donde a la vez se solicita a la USAID que de una solución a lo planteado en dicha carta.

Asimismo, acusamos recibo de su carta fechada 8 de agosto de 2002 en la cual se indica que para dar cumplimiento a lo ordenado por el Juzgado de Letras Primero de lo Civil de Francisco Morazán al emitir el cheque correspondiente, salvo mejor opinión, la USAID deberá retener el pago o depositarlo ante el Juzgado antes citado.

Queremos recordar que la USAID actúa como entidad financiera y no forma parte del contrato en referencia. En tal sentido, solicitamos se nos remitan instrucciones específicas y claras sobre el proceso a seguir, acompañadas del visto bueno del Departamento Legal del FHIS para tales efectos. Adjunto a esta nota se remiten las facturas antes mencionadas.

Lo anterior nos permitirá asegurar que la USAID no esta participando en un acto inapropiado contrario a lo establecido en la Orden Judicial emitida por el Juzgado de Letras Primero de lo Civil de Francisco Morazán, de fecha 20 de mayo de 2002.

Sin otro particular, reciba las muestras de nuestra consideración y estima.

Atentamente,

Mauricio Cruz
Jefe de Ingeniería
Oficina de Desarrollo Municipal
e Iniciativas Democráticas:

Cc:   Ing. Alfredo Zelaya, FHIS
      Lic. Hostilio López, Depto. Legal FHIS
      Annette Turkmer, USAID
      Denis Figueroa, USAID
      Ing. Mario Bu, RECAPS
      Mr. John Slake, DRC, Inc.

Mailing Address: From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-238-9320
In Honduras: Apartado Postal 3453, Tegucigalpa. M. D. C. Tel. 236-9320, Fax (504) 236-7776

4



# DRC, Inc.

**Construction & Disaster Services Worldwide**

| | | |
|---|---|---|
| **Para:**<br>TO | **Paul Tuebner, USAID Director** | **DRC, INC.**<br>Col. Lomas del Mayab, Boulevard San Juan Bosco, Calle Chertis Casa Numero 1631, Tegucigalpa, M.D.C. |
| **CC:** | Larry Palmer, Annette Tuebner, James Athanns, Dean Walter, Bobbie Meyers, Leoncio Yu Way, Dave Cartmill, File. | |
| **De:**<br>FROM | **Murray Farmer**<br>**Administrador** | **Proyecto FHIS-PDM-USAID-5220340/5220410** |
| **ASUNTO:**<br>SUBJECT: | Payment, Invoices 19, 20, 21 and Mobilization. | ZONA I ATLANTIDA: La Ceiba; Tela. COLON: Santa Fe; La Ceibita; Tocoa; Trujillo.<br>ZONA II CORTES: Omoa; Bajamar; Red Alta Pto.Cortés; Canales Pto.Cortés; Santa Cruz de Yojoa; Brisas del Rosario; Villas del Rio; Gracias a Dios; La Victoria; Dos Caminos. |
| **Fecha:**<br>DATE | July 16, 2003 | YORO: Pajuiles. |
| **Memo #:**<br>REF # | **F1–00 –MPF-PT-07-16-03** | ZONA III CHOLUTECA: Limón de la Cerca (agua); Limón de la Cerca (san.); Sector Oeste. EL PARAISO: Moroceli. OLANCHO: Juticalpa. |

Honorable Mr. Tuebner,

This letter is in reference to payment under the Group 1 contract.

DRC, Inc. has not been paid in accordance to the contract agreed upon by DRC, FHIS and USAID. DRC has not received payment for services rendered and approved by the Supervisory Engineer, and FHIS in over 14 months, DRC cannot continue operations in Honduras and other parts of the world without receiving payment. FHIS has refused to deliver DRC´s approved invoices to USAID for reasons unknown to DRC, therefore, DRC is delivering them to USAID for payment.

DRC, Inc. is hereby presenting to USAID, for payment:

- Invoice 19    $331,595.94
- Invoice 20    $232,991.36
- Invoice 21    $445,862.25
- Mobilization  $700,713.95

**TOTAL: $1,711,163.50**

DRC is invoicing USAID in accordance with the Group 1 contract, all contractual requirements of the contract, Attachment A section 13 have been fulfilled. The Supervisory Engineer and FHIS have approved these invoices in accordance with the contract. All contractual requirements have been fulfilled.

DRC kindly requests that USAID process these duly earned monies at USAID´s earliest possible convenience.

Sincerely,

Murray P. Farmer
Administrador

**Attachments:** Original Copies of the DRC invoices are being provided to the USAID Director, Paul Tuebner.



**EXHIBIT**
**D**

APR.27'2004 13:56 2513435554          DRC,INC.          #0319 P.005/010



# US AGENCY FOR INTERNATIONAL DEVELOPMENT
## USAID/Honduras

July 29, 2003

Mr. Murray Farmer
Administrator
DRC, Inc.

Re:     Hurricane Mitch Reconstruction Program, Project of Construction Works
         Group I 522-0410.03 & 522-0410.05, Honduran Social Investment Fund (FHIS)

Dear Mr. Farmer:

We acknowledge receipt of your letter dated 16 July 2003. You have submitted payment
documentation related to invoices 19, 20, 21 and mobilization payment in the total
amount of $1,711,163.50 and at the same time you have requested that USAID process
these payments.

The USAID Mandatory Clause No. 13, Alternative II, subsection A, numeral (3), which
is part of the contract between FHIS and DRC for the construction of Group I
subprojects, states the following:

> (3) Payment will be made by USAID, on behalf of the Contracting Agency, in
> accordance with the Contractor's statement as certified by the Engineer;
> approved by the Contracting Agency and accompanied by appropriate original
> documentation as set forth in subsection E below, following receipt, review
> and approval by USAID of the documentation.

As noted in the above-mentioned provision, USAID is required to make payments once
the payment documentation is approved by FHIS and sent to USAID. In that sense, once
USAID receives any invoice and related payment documentation with clear instructions
from FHIS, we will proceed to process the corresponding payments.

Sincerely,

Paul Tuebner
Director

Mailing Addresses: From USA: USAID/Honduras, UNIT 2927, APO AA 34022, Tel. 011-504-236-9320.
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C, Tel. 236-9320. Fax (504) 236-7776

EXHIBIT

E

5

APR.27'2004 13:56 2513435554          DRC, INC.                    #0319 P.007/010



**Para:**
**TO**      Paul Tuebner,

**CC:**      Annette Tuebner, James Athanus Bradd Fujimoto,
            Bobbie Meyers, Dave Cartmill, File.

**De:**      **Murray Farmer**
**FROM**     **Administrador**

**ASUNTO:**   REQUEST FOR DIRECT PAYMENT
**SUBJECT:**

**Fecha:**    August 28, 2003
**DATE**

**Memo #:**   **F1-00 --MPF-PT-08-28-03**
**REF.#**

Proyecto FHIS-PDM-USAID-5220340/522040

ZONA I ATLANTIDA: La Ceiba; Tela. COLON: Santa Fe; La Ceiba; Tocoa; Trujillo.
ZONA II CORTES: Omoa; Bajamar; Red Alta Pto.Cortés; Camelos Pto.Cortés; Santa Cruz
de Yojoa; Brisas del Rosario; Villas del Rio; Gracias a Dios; La Victoria; Dos Caminos.
YORO: Pajulios.
ZONA III CHOLUTECA: Limón de la Cerca (agua); Limón de la Cerca (salt.); Sector
Oeste. EL PARAISO: Morocelí. OLANCHO: Juticalpa.

Honorable Paul Tuebner,

This letter is in reference to your letter dated July 29, 2003. In your letter the Direct Payment Request
made by DRC was denied. USAID cited Mandatory Clause No. 13, Alternative II, Subsection A, numeral
(3). DRC kindly and respectfully does not agree with USAID's letter and with the utmost respect DRC is
presenting to you the facts in which DRC bases its direct request to USAID for payment.

## The Contract clauses and other applicable documents and/or regulations considered by DRC to be applicable to this DIRECT PAYMENT REQUEST is as follows:

•      Paragraph 3.6.4.1.c, Direct Letter of Commitment to the Contractor, in the Country Contracting
Handbook states:

"The Direct Letter of Commitment (D L/COM) **is an agreement between USAID and the contractor**,
under which USAID makes payment directly to the contractor for eligible commodities and services
furnished under a country contract. The D L/COM is assignable, under the Assignment of Claims Act, by
the contractor to a banking institution and thus may serve as collateral for credit the contractor may
require for working capital. The steps involved in this method of U.S. dollar payments are: (1) The
Contracting Agency prepares a request for a Letter of Commitment and submits it to USAID; (2) Based
on the Project Agreement and Project Implementation Letter, the request for Letter of Commitment, and
the contract, USAID issues a Letter of Commitment **directly to the contractor**; and (3) **The contractor
presents the appropriate documents listed in paragraph 3.6.4.2 to USAID, and receives payment
directly from USAID**." (Emphasis added)

•      Paragraph 3.6.4.2.f, Certification of Performance for Payments Other Than Final, in the Country
Contracting Handbook states:

"Under any of the payment methods, when the request for payment is made by the Contracting Agency or
the contractor, a certificate, signed and dated by the Contracting Agency or Engineer (if formally
authorized) is required to accompany invoices for payments (other than final payment) as follows: 'The
(Contracting Agency) certifies that (1) the services (or equipment and materials) for which payment is
requested have been satisfactorily performed (delivered) and (2) the payment requested is in accordance
with the terms of the contract'. Contracts **may** provide that if the contractor submits an invoice and the
Contracting Agency or Engineer fails to execute and deliver a certification of performance within a given





**EXHIBIT**
**F**

DRC, Inc.                                    2                          August 28, 2003

period; e.g., 30 days after submission of the invoice, payment will be made without such a certification, unless a certificate of nonperformance of specific items is delivered within such period.  In such a case payment with respect to the listed items shall be withheld subject to adjustments being made in subsequent billings." (Emphasis added)

In this particular contract, the word "may" effectively becomes the word "shall" because, as will be shown below, this Contract included the provision that USAID would automatically make payment at the end of the thirty day period if a certificate of nonperformance had not been received from FHIS.

•     Subparagraph (6), Progress Payments, of Clause 60 in Part II of the Country Contracting Handbook in part states:

(b) The Engineer shall within 15 working days after receipt of each interim statement, either indicate in writing its certification of payment due and present the statement to the Employer or return the statement to the Contractor indicating in writing its reasons for refusing such certification of payment.  In the latter case, the Contractor shall make the necessary corrections and resubmit the statement.

**************

(d) Within 20 working days of receipt of the Engineer's certification of the interim statement, the Employer shall act upon said statement by (1) approving payment, (2) informing the contractor of any objections to the statement, or (3) informing the Contractor its intent to withhold all or part of the progress payment and the **contractual** justification for withholding payment.

(e) Within 30 days of the Engineer's certification of the interim statement (unless the Employer notifies the Contractor of an objection to the statement or payment is withhold as provided above), the Contractor shall be paid the amount due, minus the retention amount stated in paragraph (8) below." (Emphasis added)

•     The Payments provisions mandated by the Country Contracting Handbook were officially incorporated into the Contract as Contract Clause 13, Payments where Subparagraph D, Progress Payments, specifically outlines conditions and time limits similar or equal to those specified in the Country Contracting Handbook.

•     Clause 5.2, Priority of Contract Documents, in Part I, General Conditions, of the Country Contracting Handbook states:

"The several documents forming the Contract are to be taken as mutually explanatory of one another, but in case of ambiguities or discrepancies the same shall be explained and adjusted by the Engineer who shall thereupon issue to the Contractor instructions thereon and in such event, unless otherwise provided in the Contract, the priority of the documents forming the Contract shall be as follows:

(1) The Contract Agreement (if completed);

(2) The Letter of Acceptance;

(3) The Tender;

)                                                                   )

, DRC, Inc.                              3                        August 28, 2003

(4) Part II of these Conditions;

(5) Part I of these Conditions; and

(6) Any other document forming part of the Contract.

There is no clause in the Contract that supplements of conflicts with this clause in the Country Contracting Handbook. Therefore, DRC relies on its applicability to the Contract. This order of precedence rule plays a critical role in this payment request.

The Construction Contract or the Contract of Agreement between the parties, which takes priority over all other conflicting documents, defines retention as:

"From the monthly payments, five (5) percent will be held (retained) as a guarantee for default work and will be reimbursed to the Contractor when FHIS has accepted the Works."

This paragraph is not ambiguous but rather it is clear, concise. The term "default work" is not defined in the Contract. However, there is no reasonable way to read this term sufficiently broad to include embargo awards rendered by the First Civil Court of Honduras. When DRC submitted its firm fixed unit price bid on this contract it reasonably interpreted this clause to mean that there would be no withholding of money as retention because DRC owes money to or has a contractual dispute with a third party subcontractor or supplier.

## The legal and contractual basis of this DIRECT PAYMENT REQUEST is as follows:

Contrary to some claims arising from the performance of Government construction contracts, the legal and contractual aspects of this direct payment request are very simple and extremely straightforward and should not require formal litigation in order to reach a resolution. USAID undertook the task of writing the Country Contacting Handbook that set up the order of precedence if there is a conflict in the specifications. USAID made this order of precedence applicable to all contracts over $250,000 that was advertised in the United States. Furthermore, FHIS had the opportunity to seek approval to modify the order of precedence clause if it desired to do so. FHIS either did not avail itself of this opportunity or the request for disapproved by USAID. The Contract was awarded with no revisions to the Country Contracting Handbook. At this point in time, all parties to the Contract are equally bound to the order of precedence clause in the Country Contracting Handbook.

Clearly, when the order of precedence clause in the **mandatory** Country Contracting Handbook is applied to resolve any conflicts in the Contract then FHIS has no contractual or legal basis for withholding payment for the embargo.

In conclusion, DRC is once again requesting the direct payment from USAID. DRC clearly has the right to request such payment and the right to receive such payment. DRC finds that USAIDS response did not quote the full text of Mandatory Clause No. 13. In fact, it is the position of DRC that it did not even quote the most applicable or relevant part of Mandatory Clause No. 13.

DRC, Inc.                 ;                 4                 )                 August 28, 2003

DRC kindly and respectfully requests that USAID pay DRC Invoices: 20 $232,531.77,  21 $445,862.25, 22 $625,224.19, Mobilization $700,713.95 and Exchange Rate of $73,424.97.

Sincerely,

Murray P. Farmer
Administrator