IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DRC, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-940C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS OR,
IN THE ALTERNATIVE FOR AN ENLARGEMENT OF TIME

Defendant, the United States, respectfully requests that the Court suspend proceedings in this matter[1] pending the district court's resolution of United States v. DRC, Inc., Civ. No. 04-01608, a False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., case currently pending in the United States District Court for the District of Columbia. In the event the Court denies the requested stay, the Government requests an enlargement of 21 days, from the date the order denying the stay is entered, in which to respond to the complaint in this case. The current stay in this case expires on December 1, 2004.[2] If granted, this

[1]The United States has also filed a motion to stay proceedings in a related, but not yet consolidated, case of DRC, Inc. v. United States, pending in this Court under docket number 04-1124C. The fraud in the pre-qualification submissions in both cases was the same. Generally the same submissions were filed by DRC to pre-qualify for both contracts. Thus, an identical fraud underlies both contracts, which, as explained more fully below, renders any vouchers or claims submitted under those contracts fraudulent.

[2]This case is currently stayed to permit an attempt at a global settlement. Counsel for the parties met on November 4, 2004. It

enlargement would constitute the Government's second enlargement for this purpose.

Counsel for the Government has spoken with counsel for DRC, who has authorized the undersigned counsel for the Government to represent to the Court that plaintiff is opposed to both the stay and the requested enlargement in the event the stay is denied.

BACKGROUND

The contract in this case was awarded by the Honduran Social Investment Fund ("FHIS"), an agency of the government of Honduras, to restore potable water and sewage removal systems in Honduras, following the destruction of Hurricane Mitch in October 1998. This contract, which was awarded first, is a companion contract to a smaller contract that is the subject of a matter currently pending in this Court under docket number 04-1124C. Both contracts were to be funded by the United States Agency for International Development ("USAID"), pursuant to its authority under the Foreign Assistance Act of 1961. The funding was to be provided through a Letter of Commitment.

The work was to be performed under a fixed-price host country contract between the government of Honduras and a pre-qualified contractor who submitted the lowest bid to perform the work. While USAID was not a party to the construction contract,

---

appears unlikely that, if it were to be agreed upon, settlement would occur before the current stay would expire.

it retained the right to approve the selection of the contractor, any changes to the contract, and to approve any subcontracting.

The pre-qualification process required the contractor to submit information regarding, among other things, its equipment; its personnel; its financial status; and, its performance history. A minimum score of 65 was established to pre-qualify and, thereby, to be eligible to submit a bid on and be awarded the contracts. The pre-qualification document contained a provision that provided that if any of the information contained in the submission was inaccurate, then the submission would be rejected and the contractor would not be pre-qualified.

DRC pre-qualified by providing allegedly false information regarding both the equipment it owned and the number and qualifications of the people that it had on staff. Based upon its pre-qualification, DRC was permitted to submit a bid. DRC submitted the lowest bid and was ultimately awarded the contract in question, which had a value in excess of $17 million.

An additional allegation of fraud relates to DRC's certification of its claims under this contract. Pursuant to USAID policy and purposes, the contract contained a clause expressly limiting the scope of subcontracting and prohibited subcontracting without prior approval of both the USAID and the appropriate agency of the Honduran government. DRC failed to obtain USAID approval before entering into subcontracts for the

work required, but nevertheless submitted vouchers for work performed by subcontractors, in each case claiming that the work had been performed in accordance with the contract requirements.

A two-year investigation was conducted by the Office of the Inspector General of USAID into allegations of fraud by DRC. The investigation was coordinated with the United States Attorney's Office for the District of Columbia. The results of that investigation are the basis for the FCA complaint pending in the district court.[3]

EFFECT OF THE FRAUD

One aspect of the fraud in this matter relates to actions by DRC in its pre-qualification submissions, which were necessary to be eligible to bid upon, and be awarded, the contract under which the claims in this case have been submitted. As set forth in the FCA complaint, DRC misrepresented both the equipment it owned and the personnel it employed in order to meet the minimum qualifying score of 65%.

Additionally, the pre-qualification documents included Form A-4, which amounted to a certification regarding the information set forth in the pre-qualification submission. That form provided that all information supplied in the pre-qualification submission was "exact and true and if to the contrary will give

[3]For the Court's convenience, a copy of the FCA complaint is attached to this motion.

place to the immediate rejection of participation." In other words, if any of the information contained in the submission was inaccurate, then the submission would be rejected and the contractor not pre-qualified. This provision, irrespective of the extent of falsity relating to the ownership of equipment and qualifications of and number of personnel, renders material any inaccurate or incorrect information provided in the pre-qualification submission.

To the extent this fraud is proven, it would constitute "fraud in the inducement," which would render any claims submitted under the contract false claims. United States v. Dyncorp, Inc., 924 F.Supp. 292 (D.D.C. 1996); United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943). This result obtains even if the individual claims were not otherwise fraudulent. Id. at 543-44.

An additional allegation of fraud relates to DRC's certification of its claims under this contract. Pursuant to USAID policy and purposes, the contract contained a clause expressly limiting the scope of subcontracting and prohibited subcontracting without prior approval of both the USAID and the appropriate agency of the Honduran Government. DRC failed to obtain USAID approval before entering into subcontracts for the work required, but nevertheless submitted vouchers for work performed by unapproved subcontractors, in each case claiming

that the work had been performed in accordance with the contract requirements. These submissions would each constitute false claims, even if the individual vouchers were not otherwise false. See AB-Tech Construction, Inc. v. United States, 31 Fed. Cl. 429 (1994)(vouchers submitted under contract entered in to pursuant to 8(a) program implied that the purposes of the 8(a) program were being adhered to).

ARGUMENT

The FCA action brought by the United States against DRC relates to the contract that is the subject of DRC's complaint in this Court. Moreover, the payments sought by DRC in its claim are upon the same contract that is the subject of the FCA complaint.

The United States is clearly allowed to pursue its False Claims Act case in the district court, despite the filing of the contract complaint in this Court. Universal Fiberglass Corp. v. United States, 210 Ct. Cl. 206, 537 F.2d 393 (1976). Because the fraud claim has already been filed in the district court, the United States does not, at this point, anticipate filing a fraud counterclaim in the instant case.[4]

Resolution of the fraud, which, as a practical matter, would

[4]In the event the status of the FCA case in the district court or other relevant circumstances should change, the United States may seek leave to amend its answer to incorporate such a counterclaim.

have to be decided first, may well be dispositive of DRC's entitlement under its claims. Thus, permitting the fraud action to proceed will simplify the proceedings relating to the contract claims or may render them moot in this Court.

Federal comity and judicial economy permit courts to transfer, stay or dismiss a case where a similar action already has been filed in Federal court. Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir.1997)(citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936)). "When and how to stay proceedings is within the sound discretion of the trial court." Id. The United States Court of Appeals for the Federal Circuit has identified a tripartite formula for this court to employ when deciding whether to stay a case:

> (1) a trial court must first identify a pressing need for the stay. . . ; (2) [t]he court must then balance interests favoring a stay against interests frustrated by the action; and [3] [o]verarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it.

Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29, 33 (2000) (citing Cherokee Nation, 124 F.3d at 1416).

Where a related case is pending before another court, as is true here, the trial court should also consider principles of comity, with the normal rules favoring the court in which a matter is first filed, Northrop Corp. v. United States, 27 Fed. Cl. 795, 801 (1993), and judicial economy, focusing upon whether

a stay is necessary to avoid duplicative litigation. Haustechnik v. United States, 34 Fed. Cl. 740, 745 (1996). While the instant case was filed first, the United States understands that the complaint in this Court was filed while the United States Attorney's Office and a different counsel for DRC were apparently negotiating the possible disposition of the FCA case. In any event, the fraud claims against DRC have only been filed in the district court, which should weigh in favor of allowing the district court case to proceed first.

A stay of the action in this Court pending trial in the related FCA case, further satisfies all of the concerns favoring such a stay. The stay is warranted in light of the potential for inconsistent results between the FCA and the contract case filed in this court.

Further, resolution by the district court of the fraud matter in favor of the United States, would render the claim forfeited pursuant to 28 U.S.C. § 2514. At the same time, if fraud in the pre-qualification is established, then the entire contract would be tainted by fraud from its inception, which would render the contract void ab initio. J.E.T.S., Inc. v. United States, 838 F.2d 1196, 1200 (Fed. Cir. 1988)(false statement that it was a small business, in order to qualify for award under the "8a" program, rendered contract void ab initio). On the other hand, if the district court concludes that there was

no fraud, then that determination would facilitate resolution of this case in a manner short of trial. Thus, resolution of this entire case could be effected without the time or expense of an extended trial regarding contract performance.

Moreover, public policy favors vindication of the public interest in the integrity of Federal contracts in a jury trial, which would require that related FCA case proceed first.

Finally, DRC would not be prejudiced by the stay. Instead, DRC would be permitted to focus upon the fraud allegations. Furthermore, any determination regarding the fraud would be res judicata, which would preclude plaintiff and the Government from having to re-litigate the issue, should the need arise, in this Court. Moreover, once the issue of fraud is resolved, that resolution should facilitate resolution of the matter in this Court short of trial.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court order that further proceedings in this matter be stayed pending the outcome of United States v. DRC, Inc., in the United States District Court for the District of Columbia. In the alternative, should the motion for a stay be denied, the United States respectfully requests a 21-day enlargement of time, from the date of an order denying the motion to stay, to respond to the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s Ronald G. Morgan
RONALD G. MORGAN
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

Attorneys for Defendant

November 16, 2004

CERTIFICATE OF FILING

I hereby certify that on this 16th day of November 2004, a copy of the foregoing "DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s RONALD G. MORGAN

KARL FREDERICK DIX
George Wenick
Smith, Currie & Hancock LLP
2600 Harris Tower
233 Peachtree Street, N.E.
Atlanta, GA 30303-1530