IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **DRC, INC.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **Case No. 04-940C** |
| **v.** | ) | **(Judge G. Miller)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DRC, INC.'S RESPONSE TO DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS OR, IN THE ALTERNATIVE, FOR AN ENLARGEMENT OF TIME**

DRC, Inc. ("DRC") files this response to the Government's motion to suspend these proceedings. The Government seeks suspension pending resolution of its recently filed suit against DRC under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, in the United States District Court for the District of Columbia ("FCA Action"). The Government contends that a stay is warranted primarily because of the alleged potential for inconsistent results in the two actions and because an outcome favorable to the Government in the FCA Action allegedly could result in forfeiture of DRC's claims here.

The Government's motion should be denied. DRC is vigorously defending itself in the FCA Action and, on November 26, 2004, moved to dismiss that action for failure to state a claim, among other reasons. Regardless of how the district court rules on that motion or otherwise decides the FCA Action, however, resolution of that action cannot cause a result inconsistent with the result in the present action. This is true for many reasons, the most important of which is that the focus of the present action is the letter of commitment issued by the Government to DRC, which is the basis for this Court's jurisdiction. In contrast, the focus of the FCA Action is a construction contract to which the Government was not a party.

## I. FACTUAL BACKGROUND

### A. The Solicitation And Group 1 Contract.

The FCA Action arises out of a construction contract ("Group 1 Contract") dated June 21, 2000, between DRC and Fondo Hondureño de Inversión Social ("FHIS"), an agency of the Honduras Government. A copy of the Group 1 Contract is attached to DRC's Complaint in this action, as Exhibit A. The Group 1 Contract concerned 22 projects ("Projects") in Honduras. The Projects involved construction or reconstruction of potable water systems, sewer systems, and other infrastructure work.

The United States Agency for International Development ("USAID") agreed with FHIS to fund the Projects. USAID was not a party to the Group 1 Contract, as the Government concedes. Gov. Mot. to Suspend at 2. On December 5, 2000, USAID issued a Letter of Commitment ("LOC"), however, that guaranteed FHIS's payment obligations to DRC, under the Group 1 Contract. DRC Compl. Ex. B. This Court has jurisdiction over the present action because the LOC is an agreement by the Government to guarantee FHIS's payments to DRC under the Group 1 Contract.

FHIS's solicitation for the Group 1 Contract set forth the procedure by which FHIS would qualify contractors and award the work. Under that procedure, contractors were to submit their qualification documents, together with their bids. FHIS found DRC and two other contractors qualified to perform the work. It awarded the Group 1 Contract to DRC, in the amount of $17,677,966.96, because DRC submitted the lowest overall bid.

FHIS's Solicitation for the Group 1 Contract stated that contractors were permitted to bid in association with one another and to submit one package of qualification documents for both. It provided, however, for segregation of each company's qualification information within that

package. The information requested in the qualification questionnaire included a list of equipment and personnel that would be available for performance of the work. DRC engaged a Honduran attorney to oversee the preparation of DRC's qualification documents, and he failed to segregate DRC's equipment and personnel from the equipment and personnel of SJ&L, a company with whom DRC intended to associate if DRC received the Group 1 Contract. Senior representatives of DRC and SJ&L submitted the documents in person together to FHIS, however, and FHIS was not mislead by the qualification documents because it observed these representatives, who were known to FHIS, and it knew that the companies were acting in association with one another. In addition, the score assigned to the qualifications documents would have been the same if had DRC segregated the SJ&L equipment and personnel.

**B. The Group 1A Contract.**

DRC also submitted qualification documents for a subsequent FHIS contract ("Group 1A Contract"), as noted in the Government's motion. Gov. Mot. to Suspend at 1, n. 1. FHIS found DRC to be qualified to perform that contract, and the Government concurred with FHIS's finding, as shown on Exhibit "A," hereto. DRC was again the low bidder and FHIS awarded it that work. The Group 1A Contract is dated December 29, 2000, and is the subject of a separate action ("Group 1A Action") pending in this Court at 04-1124C.

**C. The Government's Different Responses Concerning the Two Contracts**

USAID expressed concerns about DRC's qualification documents for the Group 1 and Group 1A Contracts, early in the life of both contracts. The Government contends that the "fraud in the qualification submissions in both cases was the same." Gov. Mot. to Suspend at 1, n. 1. As a result of its concerns, on February 23, 2001, USAID issued an implementation letter that suspended funding for the Group 1A Contract, as shown by Exhibit "B," hereto. On May 7,

2001, USAID issued another implementation letter by which USAID rescinded its approval of DRC as the contractor for the Group 1A projects, as shown by Exhibit "C," hereto. FHIS eventually delegated its obligations to the Government for the Group 1A Contract, and DRC seeks a termination settlement from the Government in the Group 1A Action.

In contrast to its response concerning the Group 1A Contract, USAID did not withdraw its approval of DRC as the contractor for the Group 1 Contract. To the contrary, USAID permitted DRC to continue working on the Group 1 Contract and to complete that work. USAID also approved increases to the Group 1 Contract and continued to fund that contract. For instance, in its implementation letter of June 1, 2001, USAID approved Change Order Nos. 1-12 to that contract, in the amount of $1,380,859.38. Exhibit "D." Moreover, of the $13 million that USAID funded for the Group 1 Contract, only $1.2 million was paid before May 7, 2001, the date on which USAID rescinded approval of DRC for the Group 1A Contract. USAID continued to fund the Group 1 Contract until August 2003.

DRC satisfactorily completed all work under the Group 1 Contract. The agreed Contract price through Modification No. 3 is $15,826,508.51. DRC has received payment of $13,029,115.49 under the Contract, leaving a balance unpaid of $2,797,393.02 on the agreed contract price. DRC also has claims against FHIS for additional payment that DRC is pursuing in arbitration, pursuant to the binding arbitration clause in the Group 1 Contract.

## II. PROCEDURAL HISTORY

### A. The Present Action

DRC filed this action concerning the Group 1 Contract on or about May 28, 2004, seeking payment of the unpaid balance due on the undisputed amount of that contract, pursuant to the guarantee in the LOC. The Government has not yet filed an answer here because of the

enlargement of its time to answer and a subsequent agreed stay of these proceedings until December 1, 2004. DRC does not know whether the Government will assert the same fraud claims in this action that it asserts in the FCA Action. The Government has stated that it does not anticipate doing so but has left open the possibility that it might. Gov. Mot. to Suspend at 6.

### B. The Group 1A Action

For the Group 1A Contract, DRC initially filed a notice of appeal on May 30, 2003, with the Armed Services Board of Contract Appeal. The Board dismissed that action for lack of jurisdiction, and DRC filed the Group 1A Action in this Court on July 6, 2004. The Group 1A Action was also stayed until December 1, 2004.

### C. The FCA Action

On September 16, 2004, the Government filed the FCA Action in the United States District Court for the District of Columbia. At that time, both the Group 1 and the Group 1A actions were pending in this Court. Consequently, the Government could have asserted its FCA claims against DRC in this Court in either or both of the pending actions. The Government elected to file in the District Court, however, and now contends that the present action should be stayed in favor of the later-filed FCA Action.

## III. THE GOVERNMENT'S ALLEGATIONS IN THE FCA ACTION.

### A. The Allegation Of Fraud Concerning The Qualification Documents.

In the FCA Action, the Government raises two types of alleged fraud. First, it alleges that DRC's qualification documents contained false statements because DRC mistakenly failed to segregate its equipment and personnel from the equipment and personnel of SJ&L. FCA Complaint at ¶¶ 12, 16-23.[1] Although the Government also alleges that the Government relied

[1] The Government attached the FCA Complaint to its motion to suspend in this action.

on DRC's false statements, it falls short of alleging that FHIS was unaware of DRC's intent to work in association with SJ&L, that DRC's qualification documents misled FHIS or that FHIS relied on the alleged false statements when FHIS awarded the Group 1 Contract to DRC.

Some of the matters at issue concerning DRC's liability for alleged fraud in the qualification documents include (a) whether DRC can be held liable for the actions of its Honduran attorney; (b) whether the failure to segregate SJ&L's men and equipment was material, since it did not affect the scoring of the qualification documents; (c) whether FHIS or USAID were in fact mislead by or relied on such mistake at the time that DRC submitted its qualification documents; (d) whether USAID knew of DRC's mistake by the time USAID issued the LOC nearly six months after the Group 1 Contract was executed and, therefore, could not have been mislead by it; and (e) whether USAID waived this issue by approving change orders and continuing to fund the work, long after it was fully informed of the circumstances surrounding DRC's qualification documents.

### B. <u>The Allegation Of Fraud For Submitting False Payment Certifications.</u>

The Government also alleges that DRC committed fraud by submitting false certifications to FHIS with its applications for payment. DRC certifications stated as follows:

> [T]he services (or equipment and materials) for which payment is requested have been satisfactorily performed (delivered) and the payment requested is in accordance with the terms of the Contract No. (Contract Number).

FCA Complaint at ¶ 32. The Government does not allege that DRC failed to satisfactorily perform any services under the Contract or that DRC requested payment that was not due in accordance with the terms of the Contract. See FCA Complaint, generally. The Government contends, nonetheless, that the DRC committed fraud by breaching a provision of the Group 1 Contract that required DRC to obtain USAID's advance written approval of all subcontractors.

FCA Complaint at ¶ 31. The Government takes that position, although DRC obtained FHIS's written approval of its subcontractors, as shown by Exhibit "E," and USAID stated that its own independent approval would not be necessary. The Government further contends that the payment certifications quoted above included the implied certification that DRC was complying with every contract provision and that any breach of the Group 1 Contract was, therefore, fraud.

Some of the matters at issue concerning DRC's liability for this alleged fraud include (a) whether the theory of implied certification is applicable here, in light of the pertinent contract terms and the wording of the certifications; (b) whether the requirement of subcontractor approval was a material contract term, such that DRC had no right to payment without such approval; (c) whether DRC complied fully with the Contract provisions concerning subcontracting by obtaining FHIS's written approval of its subcontractors and USAID's waiver of its right to provide separate approval; (d) whether USAID knew of DRC's use of subcontractors by the time USAID issued the LOC nearly six months after the Group 1 Contract was executed and, therefore, could not have been mislead by DRC's certifications; and (e) whether USAID waived this issue by approving change orders and continuing to fund the work, long after it was fully informed of the circumstances surrounding DRC's use of subcontractors.

### C. <u>The Allegation Of FCA Damages.</u>

In the FCA Action, the Government seeks to recover a civil fine from DRC of $11,000 for each of 28 pay applications that DRC submitted, for a total fine of $308,000. The Government also contends that it suffered actual damages equal to the full amount that it paid DRC, more than $13 million. Complaint at ¶¶ 37, 38. In doing so, the Government is effectively refusing to acknowledge that the projects DRC completed under the Group 1 Contract have any value. Consequently, it seeks to recover $39 million, pursuant to the portion of the FCA that

permits the Government to recover "3 times the amount of the damages which the Government sustains because of the act of that person," in addition to the civil penalty. 31 U.S.C. § 3729(a).

## IV. SUMMARY OF ARGUMENT

DRC would be prejudiced by any delay to its efforts to collect nearly $2.8 million for a contract that it satisfactorily completed more than a year ago. Moreover, the doctrine of comity requires that this litigation continue because this action was filed before the FCA Action.

The Government cannot show that there are significant issues in common here and in the FCA Action, such that a stay of this action would result in judicial economy or help avoid the possibility of inconsistent results. To the contrary, the key document in the FCA Action is the Group 1 Contract, to which the Government was not a party. Here, DRC is suing on the LOC, not the Group 1 Contract.

## V. ARGUMENT AND CITATION OF AUTHORITY

### A. DRC Would Be Prejudiced By The Requested Suspension.

The Government should not be permitted to suspend DRC's efforts to collect nearly $2.8 million on a contract that DRC satisfactorily completed more than a year ago, pending resolution of the FCA Action. The Government's maximum recovery from DRC in the FCA Action is $308,000, based on a civil fine of $11,000 for each of DRC's 28 certifications. That is only 11% of the $2.8 million that DRC seeks to recover here. DRC would be greatly prejudiced if the Government's efforts to recover $308,000 were permitted to delay DRC's efforts to recover $2.8 million. This is especially true if DRC were to prevail in the FCA Action but it is also true even if the Government were to prevail there. Even in the later situation, suspension here would delay DRC's recovery of nearly $2.5 million ($2.8 million minus $308,000) that DRC is entitled to receive immediately. Delaying payment of that amount would harm DRC in ways that the

payment of interest would not remedy; DRC would lose business opportunities if it were deprived of such a large amount of working capital.

DRC does not minimize the seriousness of any action brought by the Government alleging fraud. DRC does suggest to this Court that the Government has shown excess zeal in prosecuting DRC for such alleged fraud and should not be permitted to use that to prejudice DRC's rights. The Government's excess zeal is shown by its attempt to recover $39 million from DRC in the FCA Action, although no reported decision has ever permitted that measure of recovery – three times the entire contract amount – where the defendant completed a tangible construction project. Such excess zeal is also shown by the Government's argument in this action that DRC forfeited its right to recover under the LOC for the undisputed contract balance, although the Government waited to take any action concerning the alleged fraud until DRC completed the work. Finally, such excess zeal is shown by the Government's argument that it can suspend this action in favor of the recently-filed FCA Action, in which it elected to assert claims that it could have asserted – and still could assert – in this action.

As noted above, the Government also seeks $39 million in the FCA Action but that amount is not recoverable. Where the Government establishes a violation of the FCA, it may recover "3 times the amount of the damages which the Government sustains because of the act of that person," in addition to a civil penalty. 31 U.S.C. § 3729(a). The Government's damages under this provision are normally measured by the "difference between the market value [of the items] it received and retained, and the market value it would have received if they had been of the specified quality." *United States v. Bornstein*, 423 U.S. 303, 317 n.13, 96 S.Ct. 523, 531 n.13 (1976). That measure of damages applies where, as here, the Government receives a "tangible structure or asset of ascertainable value." *United States v. TDC Mgmt. Corp., Inc.*, 288

F.3d 421, 428 (D.C. Cir. 2002) (*citing Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429 (1994)).

The Government has no recoverable FCA damages if the Government has not "suffered any detriment to its contract interests" due to the alleged falsehood. *Ab-Tech*, 31 Fed. Cl. at 434. *See also United States v. Woodbury*, 359 F.2d 370 (9th Cir. 1966) (the Government sustained no recoverable FCA damages where it actually lent money that it agreed to lend on a housing project and got as security what it had agreed to take). Under these authorities, the Government did not plead cognizable damages in the FCA Action. It did not allege any detriment to a contract interest caused by DRC's actions. In particular, it did not allege any deficiencies in DRC's Contract performance or defects in the completed Projects. Consequently, the Government cannot recover any actual damages. *See Ab-Tech*, 31 Fed. Cl. at 434.

**B. Comity Requires That This Action Continue Because It Was First Filed.**

"[T]he Court of Federal Claims follows the general rule that where more than one court has concurrent jurisdiction over the subject matter of a case, the 'doctrine of comity' requires that litigation continue in the court in which the suit first began." *Northrop Corp. v. United States*, 27 Fed. Cl. 795, 801 (1993) (*citing Cantieri Rovina v. United States*, 10 Cl. Ct. 634, 642 (1986). The *Northrop* court further defined this doctrine, as follows:

> Comity is an equitable doctrine, intended to promote judicial efficiency. It applies where the "same parties and issues are before two or more courts with concurrent jurisdiction." Where these conditions are met, the court hearing the second filed action can, within the exercise of its discretion, dismiss in favor of the first.

*Northrop*, 27 Fed. Cl. at 801 (*citing Marathon Oil Co. v. United States*, 16 Cl. Ct. 332 (1989). As the Government concedes, the present case was filed before the FCA Action. Gov. Mot. to Suspend at 8. Consequently, the doctrine of comity requires that this action continue.

The Government cites *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) for the proposition that comity permits courts to stay a case where a similar action was already filed, but that case does not apply here because DRC filed this case before the Government filed the FCA Action. In addition, the court in *Cherokee Nation* lifted the stay granted by the trial court because it found that the trial court had not shown the "pressing need" required for a stay. *Id.* at 1416.

The Government also cites *Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 29, 33 (2000) but there the court also denied a stay pending disposition of a related district court action, in part because the district court action was filed later. The court there stated:

> [I]n denying the stay, this court is influenced by the simple fact that this case was filed before the district court action, suggesting that, under the principles of comity identified above, resolution of this case ought to take precedence.

*Id.* at 34. That court also noted that, when deciding whether to stay a matter, a court should first identify a "pressing need" for the stay, then balance the interests favoring and opposing a stay, but that "[o]verarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.* (*citing Cherokee Nation*, 124 F.3d at 1416.)

Here, the Government has not identified any pressing need for a stay, as discussed below. Consequently, this Court should follow its paramount obligation of timely resolving this matter, which is properly before it.

### C. <u>**The Government Lacks Standing To Declare The Group 1 Contract Void, *Ab Initio*, And The FCA Action Does Not Address The LOC.**</u>

The Government argues that judicial economy and the potential for inconsistent results supports suspension of this action because an outcome favorable to the Government in the FCA Action would affect DRC's right to recover here under the LOC. In particular, the Government

contends that, if the FCA Action found fraud concerning DRC's qualification documents, "then the ***entire contract*** would be tainted by fraud from its inception, which would render the contract void *ab initio*." Gov. Mot. to Suspend at 8. (Emphasis added). According to the Government, this would result in the forfeiture of DRC's claims in this action.

Before analyzing the Government's argument that the "entire contract" would be void *ab initio*, it is important to identify the "entire contract" to which the Government refers. As noted, the Government is not a party to the Group 1 Contract. Only FHIS and DRC are parties to that contract. The Government is in no position, therefore, to have the Group 1 Contract declared void or voidable. FHIS would have standing to do so but, thus far, FHIS has not contended that the Group 1 Contract is either void or voidable. DRC brings this action based on the LOC, which is the only agreement to which the Government is a party concerning the Group 1 work. *See Korea Development Corp. v. United States*, 9 Cl. Ct. 167, 175 (1985) (USAID's letter of commitment was a binding agreement between USAID and the contractor to whom it was issued). Consequently, in analyzing the Government's contention about judicial economy and the possibility for inconsistent results, it is important to remember that the Government only has standing to have the LOC declared void *ab initio*.

Once it is clear that the Government can only attack the validity of the LOC, not the Group 1 Contract, the Government's arguments about judicial economy and possibility of inconsistent results lose all force. The LOC is not an issue in the FCA Action; the Government's FCA Action complaint does not even mention the LOC. See FCA Complaint, generally. Consequently, a finding in the FCA Action that DRC violated the FCA could not result in a finding that the LOC was void *ab initio*, voidable, or valid and binding.

The Government cites *Haustenchnik v. United States*, 34 Fed. Cl. 740, 745 (1996) in support of a stay but in that case both parties requested that the case be stayed. *Id.* at 744. The court there also found that "the similarity of issues pending before the two tribunals require this court to stay these proceedings for reasons of judicial economy, as well as to avoid the possibility of inconsistent decision." *Id.* These factors are not present here.

**D. <u>The LOC Is Not Void *Ab Initio*</u>**

Moreover, the Government cannot escape liability for the balance due under the Group 1 Contract by showing that the LOC was void *ab initio*. The Government contends otherwise, in reliance on *J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200 (Fed. Cir. 1988), but that case has little application here. In *J.E.T.S.*, the contractor falsely certified that it was a small business for the purpose of obtaining a contract that had been set aside for small businesses. The Government paid the contractor the full contract amount for providing personnel for food service management at an air base for the first year of the contract and for two additional years, which were added at the Government's option. The contractor then sought an equitable adjustment for the two additional years, contending that the Government's payment obligation was not limited to the contract price because the Government failed to exercise the options properly. The Armed Services Board of Contract Appeals agreed with the contractor about the improper exercise of the options but refused to award any equitable adjustment, finding that the "bad faith of appellant in securing the award made the award voidable, if not void." *Id.* at 1199. The Court of Appeals affirmed, stating that a "government contract thus tainted from its inception by fraud is void *ab initio*...." *Id.* at 1200.

Importantly, the *J.E.T.S.* court's characterization of the contract as "void *ab initio*" was dicta; despite such characterization the court did not require the contractor to forfeit its right to

payment of the original contract amount or to reimburse any money to the Government. Indeed, as noted in *United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 214 F.3d 1372, 1377 (D.C. Cir. 2000), "nothing turned on the characterization." Here, the Government wishes to characterize the LOC as void *ab initio* and seeks to have its payment of $2.8 million turn on that characterization. The Government has not cited any case that supports such an extension of *J.E.T.S.*

Moreover, even if the law supported the Government's position that fraud in the inducement could cause the LOC to be void *ab initio*, the Government would face several factual hurdles before it could avoid its financial obligations under the LOC. For instance, the Government would have to show that, when it issued the LOC in December 2000, it was still being misled by the qualification documents that DRC had submitted to FHIS six months earlier. In addition, the Government would have to explain why it continued to have DRC perform the Group 1 work long after the Government discovered alleged mistakes in DRC's qualification documents. These issues are not before the court in the FCA Action and can only be decided by this Court.

**E. <u>The Government Has The Option To Assert The FCA Claims In This Action.</u>**

The Government has correctly cited *Universal Fiberglass Corp. v. United States*, 537 F.2d 393 (1097) for the proposition that it may pursue the FCA Action, despite the existence of the present action. *Universal Fiberglass* is also instructive, however, because the court there noted that it was "unfortunate that the defendant did not file the False Claims suit in this court as a counterclaim so that we could adjudicate the matter with an understanding of the entire circumstances." *Id.* at 399. That case also held that the Government "does not lose its right to assert a counterclaim in this court because it filed suit in a District Court based on the same cause

of action." *Id.* Consequently, if the Government remains concerned that this action could lead to inconsistent results, it can raise its FCA claims here.

## VI. CONCLUSION

For the foregoing reasons, this Court should deny the Government's motion to suspend these proceedings and order the Government to file an answer within 20 days.

DATED this _______ day of January, 2005.

By: /s/ Karl F. Dix
Karl Frederick Dix
(404) 582-8038
(404) 688-0671 – telecopier

By: /s/ George D. Wenick
George D. Wenick
(404) 582-8037
(404) 688-0671 – telecopier

SMITH, CURRIE & HANCOCK LLP
2600 Harris Tower
233 Peachtree St. N.E.
Atlanta, GA 3030-1530
ATTORNEYS FOR PLAINTIFF DRC, INC.

USAID US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

4

27 DEC 2000

Excelentísimo
Lic. Moisés Starkman Pinel
Director Ejecutivo
Fondo Hondureño de Inversión Social (FHIS)
Tegucigalpa, M.D.C.

**Programa de la USAID No. 522-0410.03**
Carta de Ejecución No. 40

Programa de Reconstrucción por el Huracán (HRP), Componente Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (Actividad de Desarrollo Municipal)

Estimado señor ministro:

Doy respuesta a su carta fechada 22 de diciembre de 2000, en la que solicita revisión y aprobación de la precalificación de empresas constructoras, para participar en la licitación de construcción de 6 proyectos de agua y saneamiento del Grupo IA.

La USAID se complace en informarle que ha revisado la documentación de precalificación, que la encuentra satisfactoria y esta de acuerdo con el análisis de calificación en el cual se calificó a las empresas o consorcios: 1) DRC Inc; y 2) RegCon - Contec.

Nosotros por este medio autorizamos al FHIS para que proceda a abrir las ofertas económicas de las empresas precalificadas. La USAID aprobará el contratista selecionado, así como el contrato previo a su firma.

Esta CdeE ha sido preparada en inglés y español. En caso de ambigüedad o conflicto entre las dos versiones, prevalecerá la versión en inglés.

Excellency:
Lic. Moisés Starkman Pinel
Executive Director
Honduran Social Investment Fund (FHIS)
Tegucigalpa, M.D.C.

**USAID Program No. 522-0410.03**
Implementation Letter No. 40

Hurricane Reconstruction Program (HRP) Component for Improved Responsiveness of Local Governments to Citizen Needs (Municipal Development Activity)

Dear Mr. Minister:

I am writing in response to your letter dated December 22, 2000, requesting the review and approval of the evaluation of the bidders' qualifications for the construction of 6 water and sanitation projects for Group IA.

USAID is pleased to inform you that we have reviewed the pre-qualification documentation and find it to be satisfactory and concurs with the Evaluating Committee's analysis qualifying the firms: 1) DRC Inc; and 2) RegCon - Contec.

We hereby authorize the FHIS to proceed to open the cost proposals of the prequalified firms. USAID will approve the selected contractor as well as the contract prior to its signature

This IL has been prepared in English and Spanish. In the event of ambiguity or conflict between the two versions, the English language version will prevail.

Mailing Addresses From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320, Fax (504) 236-7776

EXHIBIT
tabbies
A

Atentamente, Sincerely,

12/27/00

Todd Sloan
Acting Deputy Mission Director

03/21/01 13:03 FAX 011504382513 USAID/HOND/CONT- 002

# US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

23 FEB 2001

Excelentísima
Lic. Gabriela Núñez de Reyes
Ministra de Finanzas
Su Despacho

Excelentísimo
Lic. Moisés Starkman Pinel
Director Ejecutivo
Fondo Hondureño de Inversión Social
(FHIS)
Su Despacho

Programa de la USAID No. 522-0410.03
Carta de Ejecución No. 55

Programa de la USAID No. 522-0410.05
Carta de Ejecución No. 45

Programa de Reconstrucción por el Huracán (HRP), Componente Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (Actividad de Desarrollo Municipal)

Estimados señora y señor:

El propósito de esta Carta de Ejecución (CdeE) es informarles que, de acuerdo a la Sección E.1. del Anexo II del Convenio de Donación de Objetivo Especial para el Programa de Reconstrucción por el Huracán de fecha 9 de junio de 1999, y sus enmiendas (el "Convenio de Donación"), la USAID por este medio suspende, hasta nueva notificación por escrito, el financiamiento para las porciones de la Donación dirigidas al financiamiento de las siguientes compras bajo el Componente antes mencionado del PRH:

Her Excellency
Lic. Gabriela Núñez de Reyes
Minister of Finance
Tegucigalpa, M.D.C.

His Excellency
Lic. Moisés Starkman Pinel
Executive Director
Honduran Social Investment Fund
(FHIS)
Tegucigalpa, M.D.C.

USAID Program No. 522-0410.03
Implementation Letter No. 55

USAID Program No. 522-0410.05
Implementation Letter No. 45

Hurricane Reconstruction Program (HRP) Component: Improved Responsiveness of Local Governments to Citizen Needs (Municipal Development Activity)

Dear Madam and Sir:

The purpose of this Implementation Letter (IL) is to inform you that, pursuant to Section E.1. of Annex II of the Special Objective Grant Agreement for the Hurricane Reconstruction Program dated June 9, 1999, as amended (the "Grant Agreement"), USAID hereby suspends, until further written notice, funding for those portions of the Grant intended to finance the following procurements under the above-referenced Component of the HRP:

EXHIBIT B



DRC Inc
DOCUMENT CONTROL
RECEIVED 12 20

1. Contratación para la construcción de los proyectos del Grupo 1-A, por la cantidad de US$8,373,930.77, firmado entre el FHIS y la DRC, Inc. el 29 de diciembre de 2000 ("Contrato Grupo 1-A");

2. Contratación para la construcción de dos proyectos de saneamiento y drenaje del Grupo II, Zonas I y II – Alcantarillado Sanitario en La Ceiba y Drenaje Pluvial en Choloma Barrio Concepción, por la cantidad de US$2,130,695.38, propuesto a firmarse entre el FHIS y la Compañía de la Construcción (CODECON);

3. Contratación para la construcción de dos proyectos de saneamiento y drenaje del Grupo II, Zona Geográfica III – Rehabilitación de la Estación de Bombeo de Choluteca, Sector Oeste y Drenaje Pluvial de Choluteca, Limón de la Cerca, por la cantidad de US$1,178,175.38, propuesto a firmarse entre el FHIS y el Consorcio Santos y Cía. – E. Ray Watson Co. Inc. (referido en lo sucesivo como el "Consorcio Watson");

4. Contratación para la construcción de 10 proyectos de agua, saneamiento y drenaje del Grupo III, Zona Geográfica I en los Departamentos de Atlántida, Colón, Islas de la Bahía y Yoro, por la cantidad de US$8,765,057.16, propuesto a firmarse entre el FHIS y el Consorcio Watson;

5. Contratación para la construcción de tres proyectos de agua y saneamiento del Grupo III - Zona Geográfica II en los Departamentos de Cortés, Santa Bárbara y Yoro, por la cantidad de US$5,218,237.60, propuesto a firmarse entre el FHIS y el Consorcio Watson

1. Contract for the Construction of Group 1-A projects, in the amount of US$8,373,930.77, signed between FHIS and DRC, Inc. on December 29, 2000 ("Group 1-A Contract");

2. Contract for two sanitation and drainage projects for Group II - Zones I and II – Sewage System in La Ceiba and Drainage System in Choloma, Barrio Concepcion, in the amount of US$2,130,695.38, proposed to be signed between FHIS and Compania de la Construccion (CODECON);

3. Contract for two sanitation and drainage projects for Group II – Geographical Zone III – Rehabilitation of Pumping Plant in Choluteca, West Sector and Drainage System in Choluteca, Limon de la Cerca, in the amount of US$1,178,175.38, proposed to be signed between FHIS and Consortium Santos y Cia - E. Ray Watson Co. Inc. (referred to herein as the "Watson Consortium");

4. Contract for 10 water, sanitation and drainage projects for Group III – Geographical Zone I located in Atlántida, Colón, Islas de la Bahía y Yoro, in the amount of US$8,765,057.16, proposed to be signed between FHIS and the Watson Consortium;

5. Contract for three water and sanitation projects for Group III - Geographical Zone II located in Cortés, Santa Bárbara and Yoro, in the amount of US$5,218,237.60, proposed to be signed between FHIS and the Watson Consortium (together with Numbers 2,

3



(juntamente con los Números 2, 3 y 4 antes mencionados "Contratos del Grupo B").

3 and 4 above "the Group B Contracts").

Esta suspensión de financiamiento por las compras arriba indicadas es necesaria debido a las interrogantes que se han suscitado referente a estas compras. La USAID no estará en disposición de considerar ninguna solicitud para comprometer o desembolsar los fondos suspendidos hasta que estas interrogantes hayan sido aclaradas a satisfacción de la USAID.

This suspension of financing for the above-referenced procurements is necessitated by questions which have been raised regarding these procurements. USAID will not be able to consider any request to commit or disburse the suspended funds until these questions have been answered to USAID's satisfaction.

El efecto inmediato de la suspensión de fondos aquí descritos es que la USAID, hasta nueva notificación por escrito, (i) no aprobará financiamiento para el Contrato del Grupo 1-A, ó (ii) no aprobará la forma final, o financiamiento, para los Contratos del Grupo B.

The immediate effect of the suspension of funds described herein is that, until further written notice, USAID will not (i) approve funding for the Group 1-A Contract, or (ii) approve the final form of, or funding for, the Group B Contracts.

La USAID respetuosamente sugiere que el FHIS notifique a todos los contratistas y adjudicatarios de los contratos afectados por esta acción.

USAID respectfully suggests that FHIS notify all contractors and awardees of contracts affected by this action.

Lamentamos la necesidad de tomar esta acción y esperamos en un futuro cercano poder reanudar todas las actividades emprendidas bajo el Convenio de Donación.

We regret the necessity of this action and hope that we will be able to resume the full range of activities undertaken under the Grant Agreement in the near future.

Esta CdeE ha sido redactada en inglés y en español. En caso de ambigüedad o conflicto entre las dos versiones, prevalecerá la versión en inglés.

This IL has been prepared in both English and Spanish. In the event of ambiguity or conflict between the two versions, the English language version will control.

Atentamente,

Sincerely,

Joseph F. Lombardo

Joseph F. Lombardo
Acting Mission Director

6

05/11/01 08:18 FAX 011504382818 USAID/HOND/CONT- 002

USAID

# US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

7 MAY 2001

Excelentísima
Lic. Gabriela Núñez de Reyes
Ministra de Finanzas
Tegucigalpa, M.D.C.

Excelentísimo
Lic. Moisés Starkman Pinel
Director Ejecutivo
Fondo Hondureño de Inversión Social
Tegucigalpa, M.D.C

Programa de la USAID No. 522-0410.03
Carta de Ejecución No. 56

Programa de Reconstrucción por el Huracán (HRP) Componente Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (Actividad de Desarrollo Municipal)

Estimado señor Ministro:

Por medio de la carta con fecha del 23 de febrero de 2001, la USAID hizo de su conocimiento la suspensión, hasta una nueva notificación por escrito, del financiamiento de 5 contrataciones bajo el componente del HRP arriba mencionado, según se especifica en esa carta.

La suspensión del financiamiento para las contrataciones en referencia fue necesaria por las interrogantes que surgieron por errores y omisiones en algunos documentos de precalificación sometidos por los licitantes en esas contrataciones. La USAID le informó en su carta del 23 de febrero que "no será posible considerar ninguna solicitud de compromiso o desembolso de los fondos suspendidos hasta que estas interrogantes se hayan aclarado a satisfacción de la USAID". Hasta el momento, estas interrogantes no han sido respondidas a satisfacción de la USAID por los licitantes. La revisión de estos asuntos continúa.

Her Excellency
Lic. Gabriela Núñez de Reyes
Minister of Finance
Tegucigalpa, M.D.C.

His Excellency
Lic. Moisés Starkman Pinel
Executive Director
Honduran Social Investment Fund
Tegucigalpa, M.D.C.

USAID Program No. 522-0410.03
Implementation Letter No. 56

Hurricane Reconstruction Program (HRP) Component for Improved Responsiveness of Local Governments to Citizen Needs (Municipal Development Activity)

Dear Mr. Minister:

By letter dated 23 February 2001, USAID informed you of its suspension, until further written notice, of funding for five procurements under the above-referenced HRP Component, as specified in that letter.

The suspension of financing for the referenced procurements was necessitated by questions arising from errors and omissions in some pre-qualification documents submitted by the bidders in those procurements. USAID advised you in its letter of 23 February that it "will not be able to consider any request to commit or disburse the suspended funds until these questions have been answered to USAID's satisfaction." At this time, USAID's questions have not been answered to its satisfaction by the bidders. Review of those matters continues.

EXHIBIT
C

Mailing Addresses: From USA: USAID/Honduras, UNIT 2027, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320. Fax (504) 236-7776

7





Con respecto al contrato con DRC, Inc., para los proyectos del Grupo IA, el contratista, ha manifestado a la USAID/Washington su intención de discutir con usted los términos de su retiro de esos proyectos. La USAID entiende que los representantes de DRC planean reunirse pronto con los oficiales correspondientes de su gobierno. Como marco de estas discusiones y cualquier otra acción hacemos de su conocimiento que la USAID no financiará el contrato firmado el 29 de diciembre de 2000 entre el FHIS y DRC, Inc., para construir los proyectos del Grupo de IA ("Contrato Grupo IA") excepto a discreción de la USAID, y a través de un convenio escrito de acuerdo con el convenio entre la USAID y el Gobierno de Honduras ("Convenio de Donación de Objetivo Especial para el Programa de Reconstrucción por el Huracán", con fecha de 16 de agosto de 1999). La USAID por este medio rescinde su acuerdo con la calificación de DRC, Inc. para la construcción de los proyectos del Grupo IA, que fue establecido en la Carta de Ejecución No. 40, fechada 27 de diciembre de 2000, y rescinde su aprobación con respecto al Contrato del Grupo IA, que fue aprobado mediante la Carta de Ejecución No. 43, con fecha 29 de diciembre de 2000.

Lamentamos la necesidad de estas acciones y esperamos que se puedan reanudar a la brevedad posible todas las actividades bajo el Componente para el Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (No. 522-0410.03) del Convenio de Donación de Objetivo Especial para el Programa de Reconstrucción por el Huracán, con fecha de 16 de agosto de 1999 ("Convenio de Donación"). En vista de lo anterior, solicitamos nos presenten a la mayor brevedad posible un plan de trabajo modificado, y si es necesario, modificar las actividades para los subproyectos del Grupo IA, para la aprobación de la USAID de acuerdo con el Convenio de Donación. Esta carta únicamente concierne al Grupo IA.



Regarding the contract with DRC, Inc. for Group 1A projects, the contractor has conveyed to USAID/Washington its intention to discuss with you the terms of a withdrawal from those projects. USAID understands that DRC representatives plan to meet with appropriate officials of your government soon. As a framework for those discussions and any other actions please be advised that USAID will not provide funding for the contract signed on 29 December 2000 between FHIS and DRC, Inc., to construct the Group IA projects ("Group IA Contract") except with USAID written agreement in its sole discretion in accordance with the agreement between USAID and the Government of Honduras ("Special Objective Grant Agreement for the Hurricane Reconstruction Program" dated 16 August 1999). USAID hereby rescinds its concurrence with the qualification of DRC, Inc., for the construction of Group IA projects, which was set forth in Implementation Letter No. 40, dated 27 December 2000, and rescinds its approvals regarding the Group IA Contract, which were set forth in Implementation Letter No. 43, dated 29 December 2000.

We regret the necessity of these actions and hope that you will be able to resume quickly the full range of activities under the Component for Improved Responsiveness for Local Governments to Citizen Needs (No. 522-0410.03) of the Special Objective Grant Agreement for Hurricane Reconstruction Program, dated 16 August 1999 ("Grant Agreement"). In light of the above, we request that you submit as soon as possible a modified work plan, and if necessary, modified subproject activities for the Group IA projects for USAID approval in accordance with the Grant Agreement. This letter concerns only Group IA.

8







Esta CdeE ha sido preparada en inglés y español. En caso de ambigüedad o conflicto entre las dos versiones, prevalecerá la versión en inglés.

This IL has been prepared in English and Spanish. In the event of ambiguity or conflict between the two versions, the English language version will prevail.

Atentamente,

Sincerely,

Timothy M. Mahoney
Mission Director

US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

1 JUN 2001

Excelentísimo
Lic. Moisés Starkman Pinel
Director Ejecutivo
Fondo Hondureño de Inversión Social
Tegucigalpa, M.D.C.

Programa de la USAID No. 522-0410.03
Carta de Ejecución No. 59

Programa de la USAID No. 522-0410.05
Carta de Ejecución No. 47

Programa de Reconstrucción por el Huracán (HRP)
Componente Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (Actividad de Desarrollo Municipal)

Estimado señor Ministro:

Damos respuesta a la carta fechada 16 de mayo de 2001 del Ing. Gunther Von Wiese, Director Interino de la Dirección de Infraestructura Mayor del Fondo Hondureño de Inversión Social (DIM/FHIS), solicitando aprobar las órdenes de cambio de costos Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 y 12 por la cantidad de Lps. 21,210,000.03 para cubrir incrementos de costos de los subproyectos de agua y saneamiento del Grupo I, ejecutados bajo el contrato de construcción, suscrito entre la Compañía DRC, Inc. y FHIS (Ver Anexo No. 1). El Párrafo 1 de la Sección de Acciones Administrativas de Contratación del Apéndice 1 de las CdeE No. 8 y 7 que regulan la relación entre la USAID y el FHIS, establecen la aprobación de la USAID por escrito con anticipación para contratos que excedan la cantidad de $ 250,000.00 de todas las enmiendas para tales contratos que podrían aumentar o disminuir la cantidad de tal contrato. En este caso, el contrato de DRC se incrementará de Lps. 265,019,504.40 a Lps. 286,229,504.43 (Ver Anexo No. 2).

His Excellency
Lic. Moisés Starkman Pinel
Executive Director
Honduran Social Investment Fund
Tegucigalpa, M.D.C.

USAID Program No. 522-0410.03
Implementation Letter No. 59

USAID Program No. 522-0410.05
Implementation Letter No. 47

Hurricane Reconstruction Program (HRP)
Component Improved Responsiveness of Local Governments to Citizen Needs (Municipal Development Activity)

Dear Mr. Minister:

We are writing in response to the letter dated May 16, 2001 from Ing. Gunther Von Wiese, Acting Director of the Directorate of Major Infrastructure of the Honduran Social Investment Fund (DIM/FHIS), requesting approval of the cost change orders Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11and 12 in the amount of Lps. 21,210,000.03 to cover cost increases of Group I water and sanitation sub-projects, executed under the construction contract signed between DRC Inc. and FHIS (See Attachment No. 1). Paragraph 1 of the Contract Administrative Actions Section of Appendix 1 to PIL No. 8 and 7 that governs the relationship between USAID and FHIS, calls for USAID approval in writing in advance for contracts in excess of US$ 250,000.00, of all amendments to such contracts, which would increase or decrease the amount of such contract. In this case, DRC's contract would be increased from Lps. 265,019,504.40 to Lps. 286,229,504.43 (See Attachment No. 2).

Mailing Addresses: From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320, Fax (504) 236-7776

EXHIBIT D

Entendemos que las Ordenes de Cambio de Costos Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 y 12 son necesarias para cubrir los incrementos en 21 de los 22 subproyectos cubiertos bajo el contrato (Ver Anexo No. 3). Las órdenes de cambio son necesarias para cubrir los incrementos en los costos debido a las siguientes razones:

1. Variaciones en las cantidades de obra necesarias para cumplir con el trabajo; y
2. Cambios en los diseños originales de los subproyectos.

Todas estas órdenes de cambio han sido revisadas y aprobadas por el supervisor de la DIM/FHIS, Hazen & Sawyer– Saybe y Asoc. Louis Berger y el Cuerpo de Ingenieros de la Armada de los Estados Unidos. Además, la Unidad de la DIM, el Departamento de Costos del FHIS, el Comité de Operaciones y el ministro del FHIS han revisado y aprobado las órdenes de cambio. Estas órdenes de cambio representan un incremento del 8.0% del monto original del contrato.

La USAID ha revisado la documentación presentada por el FHIS (Ver Anexo No. 4) respaldando las órdenes de cambio. Por lo tanto, la USAID, aprueba las órdenes de cambio y autoriza al FHIS a enmendar el contrato de DRC para cubrir los costos de las órdenes de cambio por la cantidad de Lps.21,210,000.03 ó US$ 1,380,859.38, cualquiera de las dos cantidades que sea de menor valor.

Sin embargo, hemos notado que el FHIS ha presentado junto con las órdenes de cambio, la lista de subproyectos con sus valores respectivos que son diferentes de los aprobados en el contrato original. Solicitamos al FHIS que haga las correcciones apropiadas en la cantidad acumulativa del contrato al costo original del contrato más el incremento de las órdenes de cambio.



We understand that the Cost Change Orders Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 are needed to cover cost increases in 21 of the 22 subprojects covered under the contract (See Attachment No. 3). The change orders are required to cover cost increases due to the following reasons:

1. Variations in job quantities needed to accomplish the work; and
2. Changes in the original design of the subprojects.

All of the change orders have been reviewed and approved by the DIM/FHIS' supervisor, Hazen & Sawyer– Saybe y Asoc. Louis Berger and the US Army Corps of Engineers. In addition, the DIM Unit, FHIS' Cost Department, the Operations Committee and the minister of FHIS have reviewed and approved the change orders. These change orders represent an increment of 8.0% to the original amount of the contract.

USAID has reviewed the documentation presented by FHIS (See Attachment No. 4) supporting the change orders. USAID therefore, approves the change orders and authorizes FHIS to amend DRC's contract to cover the cost of the change orders in the amount of Lps.21,210,000.03 or US$ 1,380,859.38, whichever is the lesser of the two amounts.

However, we noted that FHIS has presented along with the change orders, the list of subprojects with their respective values that are different from the ones approved under the original contract. We request that FHIS make the appropiate corrections in the cumulative contract amount to the original cost of the contract plus the increase of the change orders.

La USAID ha revisado el documento anterior y aprueba su financiamiento basado en las siguientes acciones:

1) Liberar fondos de:

| CdeE No. | Cantidad | Fuente de Financiamiento |
|---|---|---|
| 522-0410.03-04 | $1,103,943.56 | 0410.03 |
| 522-0410.05-02 | $ 276,915.82 | 0410.05 |

2) Compromiso de fondos a través de esta CdeE bajo los contratos:

| Actividad | Cantidad | Fuente de Financiamiento |
|---|---|---|
| Construcción de Subproyectos del Grupo I | $1,103,943.56 | 0410.03 |
| | $ 276,915.82 | 0410.05 |

3) Todas las actividades contempladas bajo el contrato anterior serán completadas antes del 31 de diciembre de 2001.

Esta CdeE ha sido preparada en inglés y español. En caso de ambigüedad o conflicto entre las dos versiones, prevalecerá la versión en inglés.

USAID has reviewed the above document and approves its funding based on the following actions:

1) A decommitment of funds:

| PIL No. | Amount | Funding Source |
|---|---|---|
| 522-0410.03-04 | $ 1,103,943.56 | 0410.03 |
| 522-0410.05-02 | $ 276,915.82 | 0410.05 |

2) A commitment of funds through this PIL under the contracts:

| Activity | Amount | Funding Source |
|---|---|---|
| Construction of Group I subprojects | $ 1,103,943.56 | 0410.03 |
| | $ 276,915.82 | 0410.05 |

3) All activities contemplated under the above contract will be completed by December 31, 2001.

This IL has been prepared in English and Spanish. In the event of ambiguity or conflict between the two versions, the English language version will prevail.

Atentamente,

Sincerely,

Timothy M. Mahoney
Mission Director

 File

USAID

# US AGENCY FOR INTERNATIONAL DEVELOPMENT
## USAID/Honduras

September 13, 2001

Mr. Mario Maciel
Project Director
DRC, Inc.

REF: Memo F1-00-MAM-MCX-010904-01

Mr. Maciel:

In response to your letter dated September 4, 2001, in which you requested a copy of the letter that approves the Change Orders 1-12 by USAID, attached you will find a copy of the Implementation Letter requested.

Sincerely,

Todd Sloan
Director of Municipal Development
and Democratic Initiatives

DOCUMENT CONTROL

Mailing Addresses: From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320, Fax (504) 236-7776

RECEIVED SEP 24 2001

AID-IT #006

US AGENCY FOR INTERNATIONAL DEVELOPMENT
USAID/Honduras

1 JUN 2001

Excelentísimo
Lic. Moisés Starkman Pinel
Director Ejecutivo
Fondo Hondureño de Inversión Social
Tegucigalpa, M.D.C.

Programa de la USAID No. 522-0410.03
Carta de Ejecución No. 59

Programa de la USAID No. 522-0410.05
Carta de Ejecución No. 47

Programa de Reconstrucción por el Huracán (HRP) Componente Mejoramiento de la Respuesta de los Gobiernos Locales a las Necesidades de los Ciudadanos (Actividad de Desarrollo Municipal)

Estimado señor Ministro:

Damos respuesta a la carta fechada 16 de mayo de 2001 del Ing. Gunther Von Wiese, Director Interino de la Dirección de Infraestructura Mayor del Fondo Hondureño de Inversión Social (DIM/FHIS), solicitando aprobar las órdenes de cambio de costos Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 y 12 por la cantidad de Lps. 21,210,000.03 para cubrir incrementos de costos de los subproyectos de agua y saneamiento del Grupo I, ejecutados bajo el contrato de construcción, suscrito entre la Compañía DRC, Inc. y FHIS (Ver Anexo No. 1). El Párrafo 1 de la Sección de Acciones Administrativas de Contratación del Apéndice 1 de las CdeE No. 8 y 7 que regulan la relación entre la USAID y el FHIS, establecen la aprobación de la USAID por escrito con anticipación para contratos que excedan la cantidad de $ 250,000.00 de todas las enmiendas para tales contratos que podrían aumentar o disminuir la cantidad de tal contrato. En este caso, el contrato de DRC se incrementará de Lps. 265,019,504.40 a Lps. 286,229,504.43 (Ver Anexo No. 2).

His Excellency
Lic. Moisés Starkman Pinel
Executive Director
Honduran Social Investment Fund
Tegucigalpa, M.D.C.

USAID Program No. 522-0410.03
Implementation Letter No. 59

USAID Program No. 522-0410.05
Implementation Letter No. 47

Hurricane Reconstruction Program (HRP) Component Improved Responsiveness of Local Governments to Citizen Needs (Municipal Development Activity)

Dear Mr. Minister:

We are writing in response to the letter dated May 16, 2001 from Ing. Gunther Von Wiese, Acting Director of the Directorate of Major Infrastructure of the Honduran Social Investment Fund (DIM/FHIS), requesting approval of the cost change orders Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11and 12 in the amount of Lps. 21,210,000.03 to cover cost increases of Group I water and sanitation sub-projects, executed under the construction contract signed between DRC Inc. and FHIS (See Attachment No. 1). Paragraph 1 of the Contract Administrative Actions Section of Appendix 1 to PIL No. 8 and 7 that governs the relationship between USAID and FHIS, calls for USAID approval in writing in advance for contracts in excess of US$ 250,000.00, of all amendments to such contracts, which would increase or decrease the amount of such contract. In this case, DRC's contract would be increased from Lps. 265,019,504.40 to Lps. 286,229,504.43 (See Attachment No. 2).

Mailing Addresses: From USA: USAID/Honduras, UNIT 2927, APO AA 34022. Tel. 011-504-236-9320
In Honduras: Apartado Postal 3453, Tegucigalpa, M. D. C. Tel. 236-9320, Fax (504) 236-7776

Entendemos que las Ordenes de Cambio de Costos Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 y 12 son necesarias para cubrir los incrementos en 21 de los 22 subproyectos cubiertos bajo el contrato (Ver Anexo No. 3). Las órdenes de cambio son necesarias para cubrir los incrementos en los costos debido a las siguientes razones:

1. Variaciones en las cantidades de obra necesarias para cumplir con el trabajo; y
2. Cambios en los diseños originales de los subproyectos.

Todas estas órdenes de cambio han sido revisadas y aprobadas por el supervisor de la DIM/FHIS, Hazen & Sawyer– Saybe y Asoc. Louis Berger y el Cuerpo de Ingenieros de la Armada de los Estados Unidos. Además, la Unidad de la DIM, el Departamento de Costos del FHIS, el Comité de Operaciones y el ministro del FHIS han revisado y aprobado las órdenes de cambio. Estas órdenes de cambio representan un incremento del 8.0% del monto original del contrato.

La USAID ha revisado la documentación presentada por el FHIS (Ver Anexo No. 4) respaldando las órdenes de cambio. Por lo tanto, la USAID, aprueba las órdenes de cambio y autoriza al FHIS a enmendar el contrato de DRC para cubrir los costos de las órdenes de cambio por la cantidad de Lps.21,210,000.03 ó US$ 1,380,859.38, cualquiera de las dos cantidades que sea de menor valor.

Sin embargo, hemos notado que el FHIS ha presentado junto con las órdenes de cambio, la lista de subproyectos con sus valores respectivos que son diferentes de los aprobados en el contrato original. Solicitamos al FHIS que haga las correcciones apropiadas en la cantidad acumulativa del contrato al costo original del contrato más el incremento de las órdenes de cambio.



We understand that the Cost Change Orders Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 are needed to cover cost increases in 21 of the 22 subprojects covered under the contract (See Attachment No. 3). The change orders are required to cover cost increases due to the following reasons:

1. Variations in job quantities needed to accomplish the work; and
2. Changes in the original design of the subprojects.

All of the change orders have been reviewed and approved by the DIM/FHIS' supervisor, Hazen & Sawyer– Saybe y Asoc. Louis Berger and the US Army Corps of Engineers. In addition, the DIM Unit, FHIS' Cost Department, the Operations Committee and the minister of FHIS have reviewed and approved the change orders. These change orders represent an increment of 8.0% to the original amount of the contract.

USAID has reviewed the documentation presented by FHIS (See Attachment No. 4) supporting the change orders. USAID therefore, approves the change orders and authorizes FHIS to amend DRC's contract to cover the cost of the change orders in the amount of Lps.21,210,000.03 or US$ 1,380,859.38, whichever is the lesser of the two amounts.

However, we noted that FHIS has presented along with the change orders, the list of subprojects with their respective values that are different from the ones approved under the original contract. We request that FHIS make the appropiate corrections in the cumulative contract amount to the original cost of the contract plus the increase of the change orders.

La USAID ha revisado el documento anterior y aprueba su financiamiento basado en las siguientes acciones:

1) Liberar fondos de:

| CdeE No. | Cantidad | Fuente de Financiamiento |
|---|---|---|
| 522-0410.03-04 | $1,103,943.56 | 0410.03 |
| 522-0410.05-02 | $ 276,915.82 | 0410.05 |

2) Compromiso de fondos a través de esta CdeE bajo los contratos:

| Actividad | Cantidad | Fuente de Financiamiento |
|---|---|---|
| Construcción de Subproyectos | $1,103,943.56 | 0410.03 |
| del Grupo I | $ 276,915.82 | 0410.05 |

3) Todas las actividades contempladas bajo el contrato anterior serán completadas antes del 31 de diciembre de 2001.

Esta CdeE ha sido preparada en inglés y español. En caso de ambigüedad o conflicto entre las dos versiones, prevalecerá la versión en inglés.

Atentamente,



USAID has reviewed the above document and approves its funding based on the following actions:

1) A decommitment of funds:

| PIL No. | Amount | Funding Source |
|---|---|---|
| 522-0410.03-04 | $ 1,103,943.56 | 0410.03 |
| 522-0410.05-02 | $ 276,915.82 | 0410.05 |

2) A commitment of funds through this PIL under the contracts:

| Activity | Amount | Funding Source |
|---|---|---|
| Construction of | $ 1,103,943.56 | 0410.03 |
| Group I subprojects | $ 276,915.82 | 0410.05 |

3) All activities contemplated under the above contract will be completed by December 31, 2001.

This IL has been prepared in English and Spanish. In the event of ambiguity or conflict between the two versions, the English language version will prevail.

Sincerely,

Timothy M. Mahoney
Mission Director

124

# PRESIDENCIA DE LA REPUBLICA

*FONDO HONDUREÑO DE INVERSION SOCIAL*

EXHIBIT E

## RESOLUCION No. FHIS-3-114-2001

**DIRECCION EJECUTIVA.- FONDO HONDUREÑO DE INVERSION SOCIAL (FHIS).**- Comayaguela, Distrito Central, diecinueve de marzo del año dos mil uno.

**VISTA** la solicitud presentada por la Empresa DRC.INC., para obtener **"AUTORIZACION PARA SUBCONTRATAR EMPRESAS DEL RAMO DE LA CONSTRUCCION EN LA EJECUCION DEL PROYECTO "CONSTRUCCION DE OBRAS DE AGUA POTABLE, ALCANTARILLADO SANITARIO, DRENAJE PLUVIAL Y DISPOSICION DE DESECHOS SOLIDOS, GRUPO I (FHIS/USAID)..."** Licitación No. PDM-001-2000. para la "CONSTRUCCIÓN DE OBRAS DEL GRUPO I DEL PROGRAMA DE RECONSTRUCCIÓN".- **CONSIDERANDO:** Que las Condiciones Generales de las Bases de la Licitación No. PDM-001-2000. en la Cláusula Vigésima Octava, Sección IV, numeral 3.03 dispone: "Salvo que en las condiciones especiales se disponga lo contrario o que de su naturaleza se deduzca que la prestación ha de ser ejecutada directamente por el **Contratista**, podrá concertar con terceros la realización de determinados trabajos. La celebración de estos subcontratos estará sometida al cumplimiento de los siguientes requisitos: 1. Que el FHIS y la USAID autoricen expresamente y por escrito la subcontratación con indicación de su objeto y de las condiciones económicas. 2. Que los trabajos que se subcontraten con terceros. no excedan del cuarenta por ciento (40%) del presupuesto total de la obra. 3. Que el Contratista principal siga siendo el responsable directo de la administración. 4. Que el fiador del Contratista manifieste por escrito su aprobación". **CONSIDERANDO:** Que así mismo, el Contrato de Construcción suscrito entre el Fondo Hondureño de Inversión Social y DRC.INC. para la ejecución del Proyecto "CONSTRUCCIÓN DE OBRAS DEL GRUPO I DEL PROGRAMA DE RECONSTRUCCIÓN" (Proyecto No. 522-0410.03 y 522-0410.05) en su Cláusula Vigésima Octava establece: "CESION Y SUBCONTRATACIÓN. EL CONTRATISTA no podrá ceder su obligación de cumplir lo estipulado en este contrato, ni subcontratar a terceros sin contar con el consentimiento previo y por escrito del FHIS y de la USAID".- **CONSIDERANDO:** Que son facultades del Director Ejecutivo ejercer la representación legal del Fondo por delegación expresa del Presidente de la República y dirigir el funcionamiento de la Institución, para la consecución de

sus objetivos.- CONSIDERANDO: Que la Dirección Ejecutiva para resolver la solicitud presentada y en base a lo que disponen los Artículos 63 y 72 de la Ley de Procedimiento Administrativo, requirió al peticionario para que completara su solicitud, acompañando documentación conducente; y, solicitó los informes y dictámenes obligatorios y facultativos a los órganos consultivos del FHIS: Dirección de Infraestructura Mayor (DIM) y la Dirección Legal.- CONSIDERANDO: Que la Dirección de Infraestructura Mayor, mediante el análisis de la documentación presentada, específicamente de la Descripción de Cantidades de Obra y Precios Unitarios de los trabajos a subcontratar, basándose en el presupuesto que fuera presentado ante el FHIS por la Empresa Constructora DRC,INC., en su oferta económica, con indicación de los subcontratistas, emitió Dictamen Técnico, con fecha doce de marzo del año dos mil uno, así: "RESUMEN: NACIONAL DE INGENIEROS 11.42%.- CORDICA 7.53%.- GAP 10.81%.- SERPIC 6.00%.- GRAN TOTAL 35.76%. CONCLUSION: En virtud del análisis realizado, las obras que se solicita Subcontratar constituyen un 35.76%, menor al 40% que es el porcentaje permitido en las Bases de Licitación Internacional PDM-001-2000". CONSIDERANDO: Que la Dirección Legal del FHIS mediante el estudio de los documentos presentados por el solicitante emitió Dictamen favorable, con fecha trece de marzo del año dos mil uno, en los siguientes términos: "1. Analizados los modelos de subcontratos que han sido presentados, en los cuales se ha indicado el objeto de los mismos y sus condiciones económicas, nos parecen ajustados y conforme a los Términos del Contrato y a los intereses y fines del FHIS.- 2. Que de conformidad con el Dictamen Técnico emitido por la Dirección de Infraestructura Mayor (DIM), los trabajos que se pretenden subcontratar con terceros corresponden a un 35.76% del Contrato, por lo que no exceden del 40% del presupuesto total de la obra autorizado por las bases de la Licitación.- 3. Que de conformidad con el Modelo de Subcontrato presentado, el Contratista principal, es decir DRC,Inc., seguirá siendo el responsable directo de la administración del Proyecto.- 4. Que ha sido presentada nota de la Compañía Aseguradora Hondureña en la que el Fiador del Contratista ha manifestado por escrito su aprobación a la subcontratación.- En consideración a todo lo anterior, esta Dirección Legal es de la opinión que se proceda a autorizar la subcontratación, en las condiciones anteriormente relacionadas, debiendo emitirse la respectiva Resolución.- Es entendido que de conformidad con las Bases de la Licitación, Cláusula Vigésima Octava, Sección IV, numeral 3.03, es necesario que la USAID autorice expresamente y por escrito la subcontratación". POR TANTO: La Dirección Ejecutiva del Fondo Hondureño de Inversión

Social (FHIS), en uso de sus atribuciones legales consignadas en los artículos 1, 2 reformado, 3, 4 reformado, 7, 10, 14 literales a), b) y e), 27 y demás aplicables de la Ley del Fondo Hondureño de Inversión Social; Artículos 7, 8, 9, 10 y demás aplicables del Reglamento a la Ley del FHIS; Artículos 1, 2, 32, 33, 34, 71 al 76 y 97 del Manual Operativo de Contrataciones, de Obras Públicas y Adquisición de Bienes y Servicios para proyectos de Infraestructura del FHIS; y de las Condiciones Generales de las Bases de Licitación, Cláusula Vigésima Octava, Sección IV, numeral 3.03 Subcontratación, **RESUELVE:** Autorizar a la solicitante empresa DRC.INC. las Subcontrataciones en la ejecución del Contrato de "CONSTRUCCIÓN DE OBRAS DEL GRUPO I DEL PROGRAMA DE RECONSTRUCCIÓN" (Proyecto No. 522-0410.03 y 522-0410.05), en los términos y condiciones siguientes: a) Que el objeto y las condiciones económicas de la subcontratación se suscriban de conformidad a los Modelos de los Subcontratos que fueron presentados al FHIS para su análisis y que corren agregados al respectivo expediente administrativo.- b) Que los trabajos que se subcontraten correspondan a la Descripción de Cantidades de Obra que fue presentado por la Empresa DRC.INC., y que son relacionados de manera detallada en el Dictamen Técnico emitido por la Dirección de Infraestructura Mayor (DIM), con fecha 12 de marzo del año dos mil uno, con indicación de las empresas a subcontratarse, así: **NACIONAL DE INGENIEROS** 11.42%.- **CORDICA** 7.53%.- **GAP** 10.81%.- **SERPIC** 6.00%.- **GRAN TOTAL** 35.76%.- c) Que tal y como se establece en el modelo de subcontrato presentado para aprobación del FHIS, el Contratista principal, DRC.INC, siga siendo el responsable directo de la administración del proyecto.- d) Que de conformidad con las Condiciones Generales de las Bases de la Licitación Cláusula Vigésima Octava, Sección IV, numeral 3.03, la USAID autorice expresamente y por escrito la subcontratación. **NOTIFIQUESE.**

LIC MOISES STARKMAN PINEL
Ministro-FHIS

LIC. HOSTILIO LOPEZ
Secretario

PRESIDENCY OF THE REPUBLIC
HONDURAN SOCIAL INVESTMENT FUND

RESOLUTION NO. FHIS-3-114-2001

Executive Directorate – Honduras Social Investment Fund (FHIS).- Comayagüela, Central District, nineteenth of March of the year two thousand one.-

Having Seen the request presented by the DRC INC. to obtain: "AUTHORIZATION TO SUBCONTRACT CONSTRUCTION COMPANIES FOR THE EXECUTION OF THE PROJECT 'CONSTRUCTION OF WORKS OF WATER SUPPLY SYSTEMS, SEWER SYSTEMS, RAINFALL DRAINAGE AND DISPOSAL OF SOLID WASTES, GROUP I (FHIS/USAID)" Bid No. PDM-001-2000 for the "Construction of Works of Group I of the Reconstruction Program". CONSIDERING: That the General Conditions of Bid No. PDM-001-2000, in Clause Twenty Eight, Section IV, numeral 3.03 stipulates "Except if in the special conditions the opposite is established or from its nature it is deduced that the services are to be executed directly by the Contractor, he /she may agree the execution of determined works with third parties. The execution of these subcontracts will be subject to the compliance of the following requirements: 1. That FHIS and USAID expressly authorize the subcontracting in writing with indication of its purpose and economic conditions. 2. That the works subcontracted with third parties do not exceed forty percent (40%) of the total budget. 3. That the principal Contractor continues being directly responsible for the administration. 4. That the Guarantor of the Contractor manifests his approval in writing. CONSIDERING: Likewise, that the Construction Contract signed between the Honduran Social Investment Fund and DRC INC. for the execution of the Project "CONSTRUCTION OF WORKS OF GROUP I OF THE RECONSTRUCTION PROGRAM (Project No. 522-0410.03 and 522-0410.05) in its Clause Twenty Eight stipulates: "CESSION AND SUBCONTRACTING. The CONTRACTOR may not cede the obligation of complying with what is stipulated in this contract, nor subcontract third parties without counting with prior consent in writing from FHIS and USAID". CONSIDERING: That the Executive Director of the Fund exercises the legal representation of the Fund by express delegation of the President of the Republic and directs the operation of the Institution for the achievement of its objectives. CONSIDERING: That in order to resolve the request submitted and based on Articles 63 and 72 of the Law of Administrative Procedures, the Executive Director requested the petitioner to complete his request, attaching pertinent documentation; and requested the obligatory reports and dictums from the consulting bodies at FHIS: the Directorate of Major Infrastructure (DIM) and the Legal Directorate. CONSIDERING: That the Directorate of Major Infrastructure, after analysis of the documents submitted, specifically the Description of the Quantities of Work and Unit Prices of the works to be subcontracted, based on the budget that was presented to FHIS by DRC INC. in

its economic offer, with indication of the subcontractors, issued a Technical Dictum dated twelve March two thousand one, as follows: "SUMMARY: NACIONAL DE INGENIEROS 11.42%.- CORDICA 7.53%.- GAP 10.81%.- SERPIC 6.00%.- GRAND TOTAL 35.76%. CONCLUSION: in light of the analysis made the works requested for subcontracting constitute a 35.76% of the budget, less than the 40% allowed in the International Bid Conditions PDM-001-2000. CONSIDERING: That the Legal Directorate of FHIS, after the study of the documents presented by the applicant issued a favorable Dictum dated thirteen March two thousand one, in the following terms: "1. Having analyzed the subcontract models that have been submitted, in which the purpose and economic conditions has been indicated, they seem to us to be adjusted to and inaccordance with to the Terms of the Contract and to the interests and purposes of FHIS. 2. That the Technical Dictum issued by the Directorate of Major Infrastructure (DIM) confirms that the works intended to subcontract with third parties correspond to a 35.76% of the price of the Contract, so they do not exceed the 40% authorized in the Bid Conditions.- 3. That in accordance with the Subcontract Model submitted, the principal Contractor, DRC Inc., will continue being directly responsible for the administration of the Project.- 4. That Aseguradora Hondureña, which is the Guarantor of the Contractor has stated in writing its approval of the subcontracting.- In consideration of all the above, this Legal Directorate is of the opinion that FHIS can proceed to authorize the subcontracting, in the conditions previously described, issuing the appropriate Resolution.- It is understood that in accordance with the Bid Conditions, Clause Twenty Eight, Section IV, numeral 3.03 it is necessary for USAID to expressly authorize the subcontracting in writing." THEREFORE: The Executive Directorate of the Honduran Social Investment Fund (FHIS) in the use of its legal attributions as described in Articles 1.2 reformed3,4 reformed, 7,10, 14 subsections a), b) and c) and others applicable of the Law of the Honduran Social Investment Fund; Articles 7, 8, 9, 10 and others applicable of the By-laws of the Law of FHIS, Articles 1, 2, 32, 33, 34, 71 to 76 and 97 of the Contract Handbook for the Contracting of Public Works and Acquisition of Goods and Services for FHIS infrastructure Projects; and of the General Conditions of the bid documents, Clause Twenty Eight, Section IV, numeral 3.03 Subcontracting. RESOLVES: To authorize the sub-contracts requested by DRC INC. in the execution of the Contract of "CONSTRUCTION OF WORKS OF GROUP I OF THE RECONSTRUCTION PROGRAM" (Project No. 522-0410.03 and 522-0410.05) under the following terms and conditions; a) That the purpose and the economic conditions of the subcontracting be in accordance with the Subcontract Models submitted to FHIS for their analysis and that they are attached to the corresponding file - b) That the works subcontracted correspond to the description of Quantities of Work that was submitted by DRC INC. and that are related in detailed manner in the Technical Dictum issued by the Directorate of Major Infrastructure (DIM) on 12 March two thousand one, with indication of the companies to be subcontracted as follows: NACIONAL DE INGENIEROS 11.42%.- CORDICA 7.53%.-

GAP 10.81%.- SERPIC 6.00%.- GRAND TOTAL 35.76%.- c) That just as is established in the subcontract model submitted for the approval of FHIS, the principal Contractor, DRC INC., continues being directly responsible of the project administration.- d) That in accordance with the General Conditions of the bid documents, Clause Twenty Eight, Section IV, numeral 3.03, USAID expressly authorizes in writing the subcontracting. TO BE NOTIFIED.

LIC. MOISES STARKMAN PINEL
MINISTER

LIC. HOSTILIO LOPEZ
SECRETARY